# LOOMIS, Appellant, v. MISSOURI PACIFIC RAILWAY COMPANY et al.

### In Banc, December 3, 1901.

1. **Corporation:** DIRECTORS: MUST BE STOCKHOLDERS. Under the laws of Missouri in 1881, one who was not a stockholder was ineligible to be a director of a corporation.

2. ————: MISAPPROPRIATION OF FUNDS: SUIT BY STOCKHOLDER: EXCEPTION TO RULE: ILLEGALLY ELECTED DIRECTORS. Where one corporation, which has become the owner of a majority of the stock of another company, is charged with the misappropriation and conversion of that other company's properties, the injury and loss being

Loomis v. Missouri Pacific Ry. Co.

to the company and all its stockholders and not simply to the owners of the balance of the stock, the injured company must sue in its own name, and such stockholders can not maintain an action for conversion, unless the corporate management is under the control of the guilty parties. But if the records of the injured company declare that the guilty parties were not stockholders when elected directors, and that they never at any time assumed to act as directors, and that the owners of the balance of the stock have ever been a majority of the legal directors, they can not maintain the suit; it must be brought by the company.

3. **Laches:** CONVERSION: FRAUD: KNOWLEDGE. Where discovery of a fraud is an obvious duty and easily accomplished, its non-discovery is gross laches and will not toll the statutes of limitation or the defense of laches.

4. ————: LIMITATION IN EQUITABLE ACTIONS. The statute of limitations bars equitable as well as legal actions in this State, with this distinction: when the relief sought is based upon an equitable right, a court of equity acts upon its own inherent rules and will refuse to interfere where there has been gross laches, or long acquiescence in the operation of adverse rights, even though the action may not be barred by the statute of limitations.

5. ————: ————: PRESIDENT OF CORPORATION: FAILURE TO INQUIRE. If the president of a corporation negligently and persistently refused to make any inquiry concerning the taking of coal from the company's mine by another company, which through its stockholders owned two-thirds of the stock of his company, when it was his plain statutory duty to do so, and when the slightest inquiry would have disclosed the facts, then he is chargeable with laches, and his action is barred by the statute the same as if he had knowledge that the other company was mining the coal and not accounting to him or his company for his or its share.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

*Harkless, O'Grady & Crysler, Wm. B. Thompson* and *Thos. G. Portis* for appellant.

The board of directors of a corporation are trustees for the corporation and its stockholders, and when acting for them are bound to exercise the utmost good faith. Any attempt, in

dealing with its property or affairs, to secure to themselves personal advantages over other stockholders, is subject to the most vigorous scrutiny. Schufieldt v. Smith, 131 Mo. 287; Hill v. Coal Co., 119 Mo. 9; 1 Morz on Priv. Cor. (2 Ed.), secs. 516-517; Bent v. Priest, 10 Mo. App. 543. The plaintiff in this cause, under the facts developed had a right to bring this action in the manner and form in which he has brought it. Hannerty v. Standard Theatre Co., 109 Mo. 297. No request need be made or alleged on the part of the Choctaw Coal & Mining Company's officers to maintain the suit, since the guilty parties would not comply with the request, and even if they did, the court would not allow them to conduct a suit against themselves. Hannerty v. Standard Theatre Co., 109 Mo. 306. The equity doctrine which we seek to invoke in this case grows out of and is predicated upon this equitable proposition, to-wit: that where one takes, accepts, or acquires property secretly, but contrary to the wishes and in violation of his duty to the beneficiary, and in fraud of his rights, the trust becomes a constructive or involuntary trust, and constructive or involuntary trusts include the interests in which a trust is raised by the doctrine of equity, for the purpose of working out justice, when there is no intention of the parties to create a trust relation, and a contrary intent exists on the part of the holder of the legal interests, and these trusts may usually be referred to fraud, either actual or constructive, as an essential element. Hannerty v. Standard Theatre Co., 109 Mo. 297; Bank v. Milling Co., 36 Am. St. Rep. 739; s. c., 1 Dakota 388. Equity, in enforcing a constructive trust, will follow the real owner's property and preserve his ownership into whatever form it may be changed or transmuted, and even into the hands of third parties, so long as the property or fund into which it has been converted can be traced, until it comes into the hands of an innocent purchaser for value and without notice. This rule applies to both real and personal interests. Bank v. Milling Co., supra; Bank v. Ins. Co., 104 U. S. 54;

Springer v. Springer, 114 Ill. 550; Moore v. Crawford, 130 U. S. 132.    Where officers of a corporation fraudulently divert its funds and assets and invest them in the property of another corporation in which they are officers, the latter corporation holds such property impressed with the trust in favor of the corporation diverted to the extent of the funds that can be traced into such other corporation.    Bank v. Milling Co., supra; Pitt v. McRath, Leading Cases in Equity, White & Tudor, p. 188; Swinburne v. Swinburne, 28 N. Y. App. 568; Newton v. Porter, 69 N. Y. App. 133; Springer v. Springer, supra; Moore v. Crawford, supra.    A corporation has presumptive notice of fraudulent acts of its officers who are also officers of another corporation, but have misappropriated the funds and invested them in the property of such other corporation.    Bank v. Milling Co., supra; Pitt v. McRath, supra; Swinburne v. Swinburne, supra; Newton v. Porter, supra; Springer v. Springer, 114 Ill. 550; Moore v. Crawford, supra. And gains and profits arising from property impressed with constructive trust inure to the benefit of the real owner and should be impressed with a like trust in his favor.    Bank v. Milling Co., supra; Pitts v. McRath, supra; Swinburne v. Swinburne, supra; Newton v. Porter, supra; Springer v. Springer, supra; Moore v. Crawford, supra.    A court of chancery will always relieve against a fraud by converting the person guilty of it into a trustee for those who have been injured.    Brown v. Lynch, 1 Paige's Ch. 147.    The Atoka Coal & Mining Company was bound to know and did know that a majority of the stockholders could not sell out the Choctaw Coal & Mining Company.    Feld v. Roanoke Co., 123 Mo. 613.    A trustee can not unite in himself the opposite characters of buyer and seller; and if he does so, the profits made by him may be charged to the trust for the benefit of the principal, unless he will confirm the transaction with full knowledge of all the facts.    Bent v. Priest, 86 Mo. 476; Ward v. Davidson, 89 Mo. 458; Keokuk Packet Co. v. Davidson, 95 Mo. 473; Bank

v. Iron Co., 97 Mo. 45; Gaskell v. Chambers, 26 Beaver's Rep. 360.    A shareholder's right in a corporation is defined to be a right which its owner has in the management, profits, and ultimate assets of the corporation.    Insurance Co. v. Board of Revenue, 42 Am. St. Rep. 17; s. c., 99 Ald. 1.    A corporation may become a party to or participate in a conspiracy as individuals, and may be liable for damages resulting therefrom. Dorsey v. McCaffrey, 139 Ind. 545; Nims v. Boys' School, 160 Mass. 177; Oil Co. v. Oil Co., 106 N. Y. App. 699; Craig v. Hadley, 99 N. Y. App. 134.    And corporations in a legal sense may be guilty of fraud.    Fishkill Sav. Inst., 80 N. Y. App. 162; Am. Ex. Co. v. Patterson, 73 Ind. 430; First Nat. Bank Receivership, 100 U. S. 699.    Equity will entertain bills brought by shareholders against directors to obtain relief against frauds and breaches of trust committed by them in the management of the corporate property, and the jurisdiction in such cases is based upon that ground of trust.    Chicago Cab Co. v. Yerkes, 141 Ill. 320; Hudson Assn. v. Childs, 82 Wis. 460.    The holder of a majority of the stock in a corporation can not acquire the property to himself against the interests of minority holders and in disregard of their rights.    If he does so, the owner of the minority may elect to treat the majority as a purchaser and require him to account for the value of the purchaser.    Chicago Cab Co. v. Yerkes, supra; Hudson Assn. v. Childs, supra.    All the stockholders are absolutely chargeable with the knowledge of such facts as are shown by their own records.    Kitchen v. Railroad, 69 Mo. 224.    The defense of laches finds no place in this cause.    The plaintiff is shown to have been divested and entirely deprived of his property without his knowledge, and is shown to have made many inquiries of its managing officers concerning the conduct of the business in the territory, and was always assured that it was proceeding properly, and did not discover the fraud until 1890, and then immediately filed this suit.    Betjeman v. Betjeman, supra; Mudd v. Powers, supra.    In suits in

equity, where a party has been injured by the fraud of another, and such a fraud is concealed, or is of such character as to conceal itself, whereby the injured remains in ignorance of it, without fault or want of diligence, the statute of limitation, or doctrine of laches, does not apply until discovered, and this is true, even though there be no affirmative act of concealment. Dorsey Machine Co. v. McFaffrey, 139 Ind. 546; Springer v. Springer, supra; Lewey v. Frick Coke Co., 166 Pa. St. 536; Kline v. Vogel, 90 Mo. 239; Gibson v. Herriott, 55 Ark. 85; Schneider v. Manning, 121 Ill. 388; Bliss v. Pritchard, 67 Mo. 183; Zebley v. Farmers Loan & Trust Co., 139 N. Y. 461; Fitzgerald v. Const. Co., 44 Neb. 463; Betjeman v. Betjeman, supra; Davis v. Davis, 67 N. Y. 230; Mudd v. Powers, supra; Bradshaw v. Yates, 67 Mo. 221; Henrioid v. Neusbamer, 69 Mo. 96.

*Edgar R. Rombauer* for respondent Union Trust Company, Exr.

(1) The evidence utterly fails to support the allegations of plaintiff's petition. (2) (a) The Choctaw company was the party who should properly have been plaintiff. Thompson's Com. on Law of Corporations, sec. 4477; Jones v. Williams, 139 Mo. 1; Slattery v. Transportation Co., 91 Mo. 217. Plaintiff as a stockholder could sue only if the directors of the corporation, upon application made to them, failed to do their duty, or upon showing that an application to the directors would prove unavailing because they themselves were the parties guilty of the fraud complained of. In either event, all the directors should have been made parties defendant to the action. Thompson's Com. on Law of Corporations, sec. 4480; Slattery v. Transportation Co., supra. (b) The plaintiff and his son, L. J. Loomis, are now and have been ever since the organization of the Choctaw company a majority of the directors of the Choctaw company. Hill and Talmage

were never directors of that company, either legally or in fact. In 1890 one could not, and can not now, be legally a director in a Missouri corporation in which he is not a shareholder at the time when the election of directors took place. R. S. 1879, sec. 930; R. S. 1889, sec. 2772. In order that one may be a *de facto* director in a corporation one must have held himself out and have acted as such. Thompson's Com. on Law of Corporations, sec. 3894. (3) Plaintiff was guilty of laches. (a) In Missouri, courts of equity are as much bound by the statute of limitations as courts of common law. Hunter v. Hunter, 50 Mo. 450; Rogers v. Brown, 61 Mo. 192; Kline v. Vogel, 90 Mo. 239. (b) The doctrine of laches applies to cases of fraud, and there is laches as soon as the fraud should have been discovered. Kroenung v. Goehri, 112 Mo. 641; Shelby County v. Bragg, 135 Mo. 291; Johnson v. Transit Co., 156 U. S. 618. (c) As president of the Choctaw company, it was the duty of plaintiff to familiarize himself with the affairs of the company and to advise the other stockholders, at least as often as annually, of the condition of its affairs. R. S. 1889, sec. 2774. When discovery of fraud is a duty, non-discovery is laches. Norris v. Haggin, 130 U. S. 392; Eiffert v. Craps, 8 U. S. App. 436.

*Martin L. Clardy* and *Henry G. Herbel* for respondents Atoka Coal & Mining Company and Missouri Pacific Railway Company.

(1) (a) The plaintiff can not maintain this suit to recover a portion of the dividends declared by the Atoka Coal & Mining Company. He is not a stockholder of the Atoka Coal & Mining Company. The Choctaw Coal & Mining Company, of which he is a stockholder, owns no stock in the Atoka Coal & Mining Company. (b) If the suit should be held to be one for the recovery of the value of the property of the Choctaw Coal & Mining Company, converted to its own use by the

Atoka Coal & Mining Company, then the Choctaw Coal & Mining Company was the only proper party to this suit. (c) The plaintiff, who was president of the Choctaw Coal & Mining Company, had the power to institute in the name of such company, a suit for injuries to, or conversions of the property of the Choctaw Coal & Mining Company. He could act without the expressed authority of the directors. "The president, being the legal head of the body, when an act is performed by him, the presumption will be indulged that the act is legally done and is binding upon the body." Smith v. Smith, 62 Ill. 493; DeLavergne R. M. Co. v. German Savings Institution, 20 Sup. Ct. Rep. 20. (d) There is no allegation distinctly made that the board of directors of the Choctaw Coal & Mining Company was applied to to bring the suit, and that such company refused to comply with that demand. No facts are stated: "Showing an earnest effort on the part of the plaintiffs to obtain within the corporation, itself, the relief desired;" and, therefore, this suit by an individual stockholder can not be maintained. Beshoar v. Chapell, 40 Pac. Rep. 244; Latimer v. Railroad, 17 S. E. Rep. 258; Whitney v. Fairbanks, 54 Fed. Rep. 985; Weidenfeld v. Railroad, 47 Fed. Rep. 11; Railroad v. Board, 51 Kan. 617; Cook on Stock and Stockholders and Corporation Law, sec. 740. An allegation that a party, who, it is averred, is guilty of an injury to the corporate property, is the owner of a majority of the stock, will not excuse the plaintiff from preferring a request that suit be brought by the corporation; nor will the averment that the guilty party controls the board of directors excuse him. Allen v. Wilson, 28 Fed. Rep. 677; Coxwell v. Bull, 39 Cal. 320. (2) The evidence shows that plaintiff has been guilty of laches that precludes a recovery by him. Bispham's Principles of Eq., sec. 260. A court of equity will often refuse relief because of delay in bringing the suit, though the period of such delay is less than that prescribed by the statute of limitations. This rule applies where the relief is sought on

the ground of fraud, though there be no laches until the fraud is discovered, or ought to have been discovered. 2 Pomeroy on Equity Jurisprudence, sec. 817; Burdett v. May, 100 Mo. 15; Lenox v. Harrison, 88 Mo. 498; Allen v. Colburn, 17 Mo. 190; In re Gardner, 41 N. W. Rep. 505. "The object of the rule is to encourage diligence and to discourage delay by refusing equitable relief when the demand is stale." Kroenung v. Goehri, 112 Mo. 648; Landrum v. Bank, 63 Mo. 56; Kline v. Vogel, 96 Mo. 239; Sullivan v. Railroad, 94 U. S. 807; Oil Co. v. Marbury, 91 U. S. 591; Leavitt v. La Force, 71 Mo. 356; Kitchen v. Railroad, 99 Mo. 365.

GANTT, J.—Plaintiff's petition is a statement of his case.

In substance, it avers that the plaintiff, prior to February, 1881, owned practically all of the five hundred shares of the stock of the Choctaw Coal & Mining Company, said shares being of the par value of $100 each. That this company was engaged in the mining of coal in the Indian Territory and had expended large sums of money for machinery, tools, equipments, etc., in the prosecution of its operation. That the policy of the Missouri Pacific Railway Company, which then owned and operated a railroad extending from the city of Hannibal in Missouri, through the State, crossing and connecting with its main line at the city of Sedalia, into and through the said Indian Territory and near the coal lands of the Choctaw Coal & Mining Company at Savanna in said Territory, was to acquire control of all the coal lands and coal mines and to monopolize the coal business whenever and wherever it could do so, especially the so-called coal lands in the Indian Territory, and, to carry out its purpose, it employed co-defendant, E. J. Crandall, to look into, examine and report upon the character and extent of the coal fields in the Territory. That, in the year 1881, the said Crandall, in furtherance of the purpose of the railway company, went to the Indian Terri-

tory and examined certain coal lands, among them those belonging to the Choctaw Coal & Mining Company.

In the early part of the year 1881, the Missouri Pacific Railway Company and A. A. Talmage, its general superintendent and manager, James A. Hill, its general freight agent, and E. J. Crandall, formed a conspiracy to obtain the control and possession of the stock and mining property of the Choctaw Coal & Mining Company, and to that end proposed to plaintiff in February, 1881, that the capital stock of said mining company should be increased to $100,000, the $50,000 of new stock to be issued to the plaintiff who should sell the same, with $16,000 of the original stock, to defendants, who were either to pay him in cash therefor or expend an amount of money equal to the par value of the stock in improving the mines belonging to the Choctaw Coal & Mining Company and securing transportation facilities for their output, and that the number of directors, of which defendants were to form a majority, was to be increased from three to five. The plaintiff accepted the proposition so made and the capital stock of the Choctaw Coal & Mining Company was increased to $100,000 and the new stock of $50,000 and $16,000 of the old stock were turned over to Talmage, Hill and Crandall (who were elected directors in pursuance of the agreement), and to the railway company.

That, thereafter, Talmage, Hill and Crandall and the railway company caused to be incorporated, under the laws of Illinois, the Atoka Coal & Mining Company, one of the defendants herein, with a capital stock of $500,000, comprising five thousand shares of $100 each. That the subscribers for the Atoka stock were: J. N. Patton, C. M. Hays, A. A. Talmage, J. A. Hill, L. S. W. Folsom and E. J. Crandall; the said Patton, Hays, Talmage, Hill and Folsom subscribing for fifty shares of stock each, and E. J. Crandall for four thousand, seven hundred and fifty shares. That no part of the subscription of 4,750 shares, the par value of which amounted to

$475,000, was made by Crandall for himself, but 2,500 shares of it were subscribed for and on account of the railway company, and 2,250 shares were held by him in trust for the Atoka Coal & Mining Company, to be disposed of in the manner thereafter to be directed by its board of directors. That Crandall subscribed for the large amount of the capital stock of the Atoka company in pursuance of a conspiracy devised and carried out by the Missouri Pacific Railway Company and Talmage, Hill and Crandall, by means of which the railway company was to acquire and keep the control and management of the Atoka Coal & Mining Company and its business, and in order that it might acquire the control and benefits of the property and business of the Choctaw Coal & Mining Company without paying anything therefor. That A. A. Talmage, James A. Hill, E. J. Crandall, C. M. Hays and L. S. W. Folsom were elected directors of said Atoka company, and A. A. Talmage was elected president; C. M. Hays, secretary, and E. J. Crandall, treasurer. That, on or about the first of July, 1881, said Talmage, Hill and Crandall transferred the $66,000 of the capital stock of the Choctaw company, theretofore assigned to them by W. H. Loomis, to the Atoka company, receiving therefor $64,800 of the capital stock of the latter company, which latter stock they converted to their use, and that of the Missouri Pacific Railway Company, and thus defrauded the plaintiff out of the whole amount of the $66,000.

That, from the year 1881 to the year 1887, the mines of the Choctaw company were worked at a monthly profit of $5,000, and that such profits were expended by Talmage, Hill and Crandall, under the direction of the railway company, in the development of the mines of the Atoka company; and such of said profits as were not so expended, were wrongfully and fraudulently converted to the use of the railway company and said other parties, to the damage of plaintiff in the sum of $550,000.

That the Atoka Coal & Mining Company, prior to the institution of this suit, had declared and paid out to the holders of 4,900 shares of its capital stock the sum of $220,500, which said sum was paid to defendants, Missouri Pacific Railway Company, James A. Hill and Atoka Coal & Mining Company, and which sum was derived from operating the properties of said Choctaw Coal & Mining Company by the Atoka Coal & Mining Company. That, in April, 1887, the mines were carelessly and negligently destroyed and abandoned by the Atoka company, and the machinery, property and business belonging to the Choctaw company were converted by said Atoka company to its own use. That plaintiff was thereby deprived of all his interest in said property, income and business of the Choctaw company, in addition to his loss of $66,000, the purchase price of the stock transferred by him, which had never been paid for. That the promise to expend that amount for betterments upon the property was not kept.

That Talmage, Hill and Crandall were employees of the railway company and committed the fraudulent acts stated at its dictation and for its, as well as their own, benefit. That all of these acts and things were done by the railway company, Talmage, Hill and Crandall, without the knowledge of plaintiff, and so secretly as not to put him on notice thereof. That he was kept in ignorance as to the wrongful and fraudulent acts of the parties aforesaid until about January 4, 1890, when disclosures were made by Crandall and Hill in a certain suit instituted by said Hill against the Atoka Coal & Mining Company in the circuit court of the city of St. Louis, Missouri, to recover a dividend claimed to have accrued on a number of shares of the stock of the Atoka company held by him.

The petition contains the following averment:

"Plaintiff further says that, under the facts and circumstances of this case, as they have come to his knowledge, since the institution and trial of the said suit of the defendant, James A. Hill, against the Atoka Coal & Mining Company,

in the circuit court of the city of St. Louis, State of Missouri, at its June term, 1891, he could not procure the said Choctaw Coal & Mining Company to institute this suit or to take any action whatever against the other defendants, because each and all of them were, themselves, the actors in the perpetration of the many wrongs and injuries against the plaintiff herein alleged and complained of, and any such action and proceedings would be against themselves; that plaintiff has made no request or demand of them, or the said Choctaw Coal & Mining Company, or its said stockholders or directors, to institute this suit or to take any action whatever in the premises for the said reasons, and for the further reason that the said defendants have had, and still have, the absolute control of the said Choctaw Coal & Mining Company, all. its property, business, books, papers, records and accounts, and, having wrongfully, willfully and fraudulently converted all its moneys, property and assets of every kind and character to their own uses and purposes, as before stated, it is not reasonable to expect or safe to rely upon them, or any of them, to institute, or prosecute if instituted, any suit against themselves, or to take any action looking to restoring to the said Choctaw Coal & Mining Company, or to this plaintiff, any part of the money, property or assets belonging to him."

The answers of defendants, Crandall, the Missouri Pacific Railway Company, and the Atoka Coal & Mining Company, are general denials.

The answer of James A. Hill is as follows:

1. He denies the allegations of the petition.

2. He avers that: "The cause of action, if any there be, arising to plaintiff on account, or by reason of, the several allegations and complaints in his petition contained, did not accrue within five years before the said petition."

3. He avers: "That plaintiff's cause of action, if any there may be, arising on account, or by reason of, the several

Vol 165 mo—31

allegations and complaints in his petition contained, is a stale claim, and that plaintiff has been guilty of laches in allowing ten years to elapse before seeking to enforce the same."

To the new matter set up in the last answer, the plaintiff filed a replication.

The cause was tried at the April term, 1897, of the circuit court of the city of St. Louis, the bill dismissed and judgment rendered for all the defendants.   Plaintiff appeals.

Out of the voluminous record which the modern system of stenographic reporting has imposed upon us, we glean the following substantive facts and material evidence.

The plaintiff was a citizen of Hannibal, Missouri, and a man of large business experience, particularly in operating coal·mines, in the neighborhood of Bevier in this State.   In the year 1880, the Choctaw Coal & Mining Company was organized and created a corporation under the laws of Missouri, with its principal office at Hannibal, Missouri.   The plaintiff, L. J. Loomis and M. L. Pierson were its original incorporators and stockholders, the plaintiff owning all of the original five hundred shares except a few shares owned by the other two.   In 1880, at the cost of some fifteen hundred dollars, plaintiff became the owner of a lease of some coal lands at Savanna in the Indian Territory, upon which a slope had been opened.   This lease is indiscriminately mentioned in the testimony as the Haley, Pusley & Hill claim, or as Savanna No. 1.   The lease was dated January 8, 1880, for one year, with a privilege of renewal for ninety-nine years.   The rental was to be paid on the basis of royalties for the coal mined. The personal property purchased with the lease consisted of a gin (a primitive device for getting coal to the surface), several miner's cabins, some nine houses, a barn and some mining cars.   The plaintiff claimed also to have at that time an option· for a lease on certain other property known as the Folsom & Morris claim, situated near Atoka in the Indian Territory, thirty-five miles distant from Savanna.   This option was for

one year without the privilege of renewal, but Crandall, a witness for plaintiff, denies that any such option existed. Plaintiff also claimed he had an option for a lease on property known as the O. Herbert claim, near Atoka; this option was for one year without privilege of renewal, and expired latter part of 1880. He also claimed an interest in property known as the Davis claim, but according to plaintiff's testimony he had a conversation with Davis who told him that whenever he (Davis) was satisfied that plaintiff would work the claim in good faith he would give him a lease, but never made him a lease, and the Atoka company never obtained this property from plaintiff or the Choctaw Coal & Mining Company of Missouri, but whatever rights it subsequently secured therein it purchased from an unincorporated body of Indians and "squaw" men. In 1880, plaintiff turned over his options and leases aforesaid to the Choctaw Coal & Mining Company, of which he was the substantial owner and which then had a capital stock of $50,000, and a board of directors consisting of plaintiff, L. J. Loomis and M. L. Pierson. The Choctaw company then continued to operate the mine at Savanna until it subsequently turned it over to Crandall as the representative of the Atoka company. It was making little, if any, money, and no money was turned over to the Atoka company when it took charge in 1881.

The Atoka Coal & Mining Company was organized on the fourteenth of March, 1881, under the laws of Illinois, with a capital stock of $500,000, divided into 5,000 shares of the par value of $100 each. The original shareholders in this company were: J. N. Patton, 50 shares; A. A. Talmage, 50 shares; Charles N. Hays, 50 shares; James A. Hill, 50 shares; L. S. W. Folsom, 50 shares; and E. J. Crandall, 4,750 shares. These shareholders, with the exception of Folsom and Crandall, were officers and employees of the Missouri Pacific Railway Company. Of the shares of stock held by Crandall, he transferred 2,500 shares to James A. Hill on July 1, 1881,

as trustee for the Atoka company. Of these, 2,000 shares were sold by Hill for the company at $30 a share, prior to January 14, 1882, and the $60,000 thus obtained were placed in the treasury of said company.

The remainder of the trustee stock was transferred to the Missouri Pacific Railway Company, July 27, 1881, in payment of switches, etc., built and furnished by said company. Of the balance of the stock held by Crandall, 1,500 shares were transferred to the railway company, and upon this stock the railway company paid an assessment of $25 per share as did all the other shareholders of the stock held by them, except those who had purchased from Hill, they having paid $30 a share for their stock, and Crandall who refused to pay the assessment. So that up to June, 1882, the stockholders of the Atoka company had paid into its treasury $126,800.

Returning now to plaintiff and his company. In 1881, it seems that Crandall and plaintiff had a talk about his mining property in the Territory, in which Crandall told him the railway company, which at that time was operating the Missouri, Kansas & Texas railroad, which ran near Savanna, was desirous of getting coal property along its route and proposed to plaintiff that he increase the stock of the Choctaw company from $50,000 to $100,000 and transfer $50,000 of the new stock and $16,000 of that already held by plaintiff, making $66,000 in face value, to Crandall, Hill and Talmage for the Missouri Pacific Railway Company, and they would put in that amount in the way of improvements, engines, hoisting apparatus, etc., and would put in a side track. As a result of these negotiations plaintiff caused the stock of the Choctaw Coal & Mining Company to be increased to $100,000 and the number of directors increased from three to five. Pierson resigned as a director and Crandall received ten shares of stock and was elected in place of Pierson. Thereupon plaintiff turned over to Crandall, Hill and Talmage two-thirds of the stock of the Choctaw Coal & Mining Company,

or rather $66,000 of the stock, on June 30, 1881, and on the following day they transferred it to the Atoka company. The record book of the Choctaw company recites that on May 24, 1881, Hill and Talmage were elected directors of said company, but at that date it is clear neither of them were stockholders in said company, and they were ineligible under the laws of Missouri to become directors, having no stock in the company. There is no evidence that either Hill or Talmage ever performed or attempted to perform any acts as directors of that company.

According to Crandall, the railway company was not to pay plaintiff money for the stock, but he was to be compensated by the greatly increased output of the mine. The Atoka company would build up the property and he would get his pay by the enlarged operations of the company. And plaintiff corroborates this account of the transfer except that he says that his stock was not to share in the expense of the improvements, whereas, Crandall says the improvements were to be paid for by the Choctaw company, the stock bearing its proportionate part thereof. The only property worked by the Choctaw company was the mine known as Savanna No. 1, the Hailey-Presley-Hill claim.

It is clear that whether plaintiff had an option on the Folsom & Morris and O'Hebert claims or not, the options expired before they ripened into leases, and the Choctaw company had no interest in them when the Atoka company was chartered, and both, according to Major McDonnell's evidence, subsequently proved to be utterly valueless as coal mines. As already said, it is too clear for argument that plaintiff had neither an option nor lease in the Davis tract.

The Savanna mine No. 1, was operated subsequently by the Atoka company, Talmage, Hill and Crandall having transferred the $66,000 stock of the Choctaw company to said Atoka company. The Savanna mine was operated until 1887, when an explosion occurred which killed sixteen miners, de-

stroyed all the interior works, and all the outside top-works and machinery, and since that date has never been operated by the Atoka Coal & Mining Company, an account of which was published broadcast by the public press of the country. The cost of machinery, buildings, tracks, fixtures, top-works and cars, put in by the Atoka company at the Savanna mine, was about $75,000. No dividends were ever declared from the Savanna mine, and none by the Atoka company until 1889.

The plaintiff was the first president of the Choctaw company and up to the time of the trial in this case was the only president that company ever had. As early as June 15, 1881, he knew that the Atoka company was operating "the Choctaw company's mines at Savanna, Indian Territory," and that the Atoka company was operating its own mines at Atoka and Savanna. From the beginning of the operation by the Atoka company of the Choctaw property, the superintendent of the Choctaw company, Job L. Chapman, was the superintendent of the Atoka company, until the end of 1881, when he severed his connection with the company. Mr. D. H. White, who was a cousin of the wife of plaintiff, was in the employ of the Choctaw company from the fall of 1880 until the Atoka company took charge of the property of that company, and then he entered the employ of the Atoka company and continued in the employ of that company for some two and one-half or three years later. He kept the payrolls and kept the coal and railroad accounts. He exchanged letters with the plaintiff while he was in the Territory. In 1883, when he left the employ of the Atoka company, he went to Bevier, where he entered the employ of plaintiff. He did not return to the Territory after that. He made a statement of the condition of affairs in the Territory to Mr. Loomis about "a year after he returned to Bevier, perhaps two," because Mr. Loomis told him he wanted to get what was his due. Crandall, upon whom Mr. Loomis seemed to rely for information, severed his

connection with the Atoka company in 1883, and plaintiff was advised of this fact not later than 1884. At that time plaintiff was informed by Crandall that Hill and the defendant railway company were operating the mines. Plaintiff knew Hill personally. He never made any inquiries either of Hill, or any official of the defendant railway company, or of the Atoka company, as to the condition of the affairs of the Choctaw company, prior to the institution of this suit. All this time plaintiff resided at Hannibal, in the State of Missouri, about one hundred miles from the city of St. Louis, and was frequently in the city of St. Louis.

This suit was commenced October 6, 1891, more than ten years after the alleged absorption of the Choctaw Coal & Mining Company by the Atoka Coal & Mining Company.

I. At the threshold of this case, we are met with the objection that the plaintiff can not maintain this action, as he endeavors to do, in his individual capacity. It is obvious that plaintiff is seeking to work out his alleged equities solely through his ownership of stock in the Choctaw Coal & Mining Company and the alleged wrongful and fraudulent appropriation of the assets of that corporation by the Atoka Coal & Mining Company. Whatever rights he has in the premises are predicated upon his ownership of stock in the Choctaw company. It is plain that if the Atoka company and its codefendants were guilty of the fraudulent misappropriation and conversion of the Choctaw company's properties, which he asserts, the injury and loss was to the Choctaw company and all of its stockholders and not to plaintiff only, and in such cases the general rule unquestionably is that the injured corporation must sue in its own name and an individual stockholder can not maintain the action. [Slattery v. Trans. Co., 91 Mo. 217; Hannerty v. Standard Theatre, 109 Mo. 305; Meyer v. Bristol Hotel Co., 163 Mo. 59; Hawes v. Oakland, 104 U. S. 450; Thompson's Com. on Corps., secs. 4476-77.]

To this general rule of practice there are well-defined

exceptions, and plaintiff insists that he has brought himself within one of the exceptions by alleging that "plaintiff has made no request or demand of the Choctaw Coal & Mining Company or its stockholders or directors, to institute this suit or to take any action whatever in the premises for the reason that the defendants have had and still have the absolute control of the said Choctaw Coal & Mining Company and all its property, business, books, etc., and it is not reasonable to expect or safe to rely upon them to institute, or prosecute if instituted, any suit against themselves," etc.; and invokes the rule laid down in Hannerty v. Standard Theater Company, that, "There are occasions when the allegations that the stockholder has requested the directors to bring suit and they have refused, may be omitted, since the request itself is not required. This occurs when the corporate management is under the control of the guilty parties. No request need then be made or alleged, since the guilty parties would not comply with the request; and even if they did the court would not allow them to conduct a suit against themselves." [Cook on Stockholders (4 Ed.), sec. 741.] Reference to that case will show that the directors were the persons charged by one of the stockholders therein with mismanagement of the corporate property.

It is true that plaintiff alleges that Hill, Talmage and Crandall were stockholders and directors in the Choctaw Coal & Mining Company, and controlled that company, and constituted a majority of the stockholders therein, but the proofs are that when the stockholders of the Choctaw company, on May 24, 1881, undertook to elect Hill and Talmage directors of said company they were not stockholders therein and could not be legally elected directors under the laws then existing, and in force when this suit was brought; and that they never at any time assumed to act as such, and under the evidence the plaintiff and his son, L. J. Loomis, are now and have ever been since the organization of said Choctaw company, a ma-

jority of the legal directors of said company.   [R. S. 1879, sec. 930; R. S. 1889, sec. 2772; Thompson's Com. on Corps., sec. 3894.]

Stripped of this allegation that Talmage, Hill and Crandall were the directors of the Choctaw company, the remainder of the petition discloses an attempt by an individual stockholder to recover from another corporation, moneys alleged to be due the corporation in which he is one of the stockholders, and that, too, when the records of the Choctaw company disclosed that plaintiff and his son constitute a majority of the board of directors, for, while the minutes of the meeting of the Choctaw company recite that Hill and Talmage were elected directors on May 24, 1881, it is conceded that they did not become stockholders in said company until June 30, 1881, and then only retained the stock long enough to transfer it, on that day or the next, to the Atoka company. There is no evidence that they were ever notified of their pretended election as directors on May 24, 1881, and it is certain that they never assumed to act as directors at any time, hence we say that the evidence shows that plaintiff and his son, at every period of the existence of the Choctaw company, constituted the majority of its board of directors and there was no obstacle in the way of their instituting this action in the name of the corporations for the alleged wrongs committed against that corporation and its stockholders.   By his own averments plaintiff shows he never sought corporate action by his company; made no attempt to call a meeting of its directory and made no request that this suit be brought and, hence, has not brought himself within the exception which he invokes.

Mr Justice MILLER in Hawes v. Oakland, 104 U. S. 450, with his accustomed clearness and vigor, states the doctrine which met the approval of this court in Slattery v. Transportation Co., in 91 Mo. 217, in these words:   "But, in addition to the existence of grievances which call for this kind

of relief, it is equally important that, before the shareholder is permitted, in his own name, to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court, that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must take an earnest, not a simulated, effort with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits, or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders, as a body, in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it. The efforts to induce such action as complainant desires on the part of the directors, and of the shareholders when that is necessary, and the cause of failure in these efforts should be stated with particularity."

Plaintiff's allegations and proofs fall far short of the requirements of the rule thus announced and approved by this court, and his action must fail for this if no other reason.

II. But the circuit court held that plaintiff had been guilty of such laches as to prevent his recovery.

This action was commenced on the sixth of October, 1891, and the acts which plaintiff states deprived the Choctaw company and plaintiff of the property, which that company claimed to have leased in the Indian Territory, were committed in the spring of 1881, more than ten years before the commencement of this suit. As already stated plaintiff was the president of the Choctaw company; he and his son constituted a majority of its directory; plaintiff was a man of large business experience.

On the fifteenth day of June, 1881, he received a letter from Crandall with the caption:

"Atoka Coal & Mining Company,
"Miners and Shippers of Coal.

"General Office, 100 N. Fourth Street, St. Louis.

"Operating Choctaw C. & M. Co.'s Mines at Savanna, Indian Territory; Mines at Atoka and Savanna, Indian Territory, on M., K. & T. Division of Missouri Pacific Railway."

He says this was his first information that the Atoka company was operating the Choctaw property. In 1887 an explosion occurred in the Savanna mine which utterly destroyed it and killed sixteen of the miners, and the catastrophe was published throughout the country, and read by plaintiff.

As president of the Choctaw company and as a member of its board of directors, the duty devolved upon the plaintiff to inform himself of the affairs of that company, and at least as often as once a year to advise the other stockholders of the condition of its affairs. This duty was imposed upon him by section 932 of the Revised Statutes of Missouri of 1879, and section 2774 of the Revised Statutes of Missouri of 1889, which provides: "The trustees or directors of the corporation shall keep correct accounts of their transactions, and have full statements of the condition of affairs of such corporation and a list of the stockholders and the number of shares held by each made out, and a copy thereof delivered or sent by mail to each of the stockholders as often as once in each year, at least ten days before the day of election." He knew that his former superintendent, Job L. Chapman, was superintendent of the Atoka company until the end of 1881. His wife's cousin, Mr. D. H. White, was in the employ of the Atoka company and keeping its books until 1883. He knew as early as 1884 that Crandall, his friend in the Atoka company, had severed his connection with that company in 1883. Crandall told him in 1884 that Hill and the railway company were operating the mines. He knew Hill, and was frequently in St.

Louis, yet he never asked either Hill or any official of the railway company, or of the Atoka company, all of whom were located in the city of St. Louis, for any statement concerning the operations of the Choctaw and Atoka companies. Mr. White made him a statement, not later than 1885, of the condition of affairs with reference to these coal companies in the Territory. He read in the newspapers in 1887 of the explosion of the mine in that year and of the great loss of life and property attending the same.

The first step he took in the matter was in 1891, after he had read the testimony of Hill and Crandall in the suit of Hill against the Atoka company. To avoid the effect of this long delay in asserting his rights and the rights of the company of which he was president, plaintiff avers and testifies that he was ignorant of the fraud until 1890, when he heard the testimony of Hill and Crandall in the case of Hill against the Atoka company; that he had turned the property over to defendants as his trustees and they assured him it was being properly conducted, and he relied on them.

Keeping in view plaintiff's position as president of the Choctaw company, and his duty to the stockholders of that company to protect their rights, his conduct is utterly inexplicable if he considered the Choctaw company's interest in the mining property at Savanna of any value. When he learned in June, 1881, that this property was not being operated by his own company; that the Atoka company was in charge, the law and the plainest and simplest principles of ordinary business prudence dictated that he should ascertain by what authority a rival corporation had assumed to take charge and run said mine. Crandall's letter gave him absolute knowledge that the Atoka company was operating the Choctaw mine in June, 1881, and yet as president he took no steps to fix the royalties his company was to receive; sought no accounting as to the improvements put in by the railroad company, but supinely sat in his office at Hannibal and made

no effort even by inquiry of Hill, the Atoka company or the railroad company as to the state of the account, or by what authority they had assumed to operate the property as an Atoka mine. Nothing in their previous negotiations looked to the Atoka company running the property in its name.

No statement of the earnings of Savanna mine No. 1, or of either of the tracts on which plaintiff claimed to have an option, was demanded, even by letter, and no visit was by plaintiff made to the mines though they could be reached from Hannibal in a day by a direct railroad line.

In 1883 he was advised that Crandall had ceased his connection with the Atoka company and was told by Crandall that Hill and the railway company were operating the mines, and in 1885, White, his relative, made him a statement, and yet he took no steps to realize anything. And finally, when the mine was utterly destroyed and all hope of further profit ceased, he still made no claim for an accounting.

Such indifference is unaccountable in one who seriously thought that he or the company of which he was president had an interest worth protecting. In the meantime, the slightest diligence, even if he had not actual knowledge thereof, would have disclosed to him that the Atoka company was carrying on an extensive business in coal in its own name and taking no account of any supposed rights of the Choctaw company in its earnings. If such conduct does not amount to laches on his part, then it would be difficult to define in what laches consists.

Under such circumstances, a plea of ignorance of what was transpiring openly before the whole world must receive little consideration. As an officer of the Choctaw company it was his plain statutory duty to have ascertained, at least once a year, the condition of its property and the state of its affairs, and if others were openly asserting title to its mines without right, to have instituted actions to preserve its rights.

In Norris v. Haggin, 136 U. S. 386, Mr. Justice MILLER,

speaking of the principle that in a court of equity time does not begin to run against a party until the fraud is discovered, said: "That the facts out of which he was bound to know this fraud, if his bill be true, existed, were open, were patent, and could not fail to be discovered by any sort of inquiry or investigation, is so clear that there is no room for the doctrine of his having discovered these facts only a year or two before the suit was brought, or indeed after he had employed counsel. It is a part of this general doctrine, that to avoid the lapse of time or statute of limitation, the fraud must have been one which was concealed from the plaintiff by the defendant, or which was of such a character as necessarily implied concealment. Neither of these principles can apply to the defendant in this case. The acts which constituted the fraud as alleged in the bill were open, public acts. . . . . . . If he had made any inquiry at all, he must have known of the proceedings on which they rest their title."

All of which applies with full force in this case. Plaintiff knew as early as 1881, in June, that the Atoka company was operating the Savanna mine in its own name. According to his version of the arrangement with Crandall, the railroad company was to be at the whole expense of outfitting the mine, putting in the switches, the hoisting apparatus, etc., without charging his stock with any of the costs thereof. So that whatever the output, he was entitled to one-third of the value of the coal on board the cars and he knew that he could readily ascertain the amount shipped by inquiry. The mines were worked openly, and the Atoka company was receiving the proceeds, his share as well as its own, and continued to do so until the mine was destroyed in 1887. To say now he only discovered these things in 1890 is to say he blindly and persistently shut his eyes for ten years and was guilty of a palpable violation of his duty as president of the company under the statute.

Where discovery of a fraud is such an obvious duty and

so easily accomplished, its non-discovery must be held to be gross laches and its non-discovery will not toll the statute of limitations or the defense of laches.

The statute of limitations bars equitable as well as legal actions in this State (sec. 6775, R. S. 1889), with this distinction: when the relief sought is based upon an equitable right, then a court of equity acts upon its own inherent rules and will refuse to interfere where there has been gross laches or long acquiescence in the operation of adverse rights, even though the action may not be barred by the statute of limitations.   [Per SHERWOOD, J., in Kline v. Vogel, 90 Mo. 247.]

The same doctrine was again announced in Kroenung v. Goehri, 112 Mo. l. c. 648, in which it was said: "A court of equity will refuse relief where the party has slept upon his rights for an unreasonable length of time, and this, too, without regard to the statute of limitations.   In other words, a court of equity will often refuse relief because of delay in bringing the suit, although the period of delay is less than that prescribed by the statute of limitations.   The object of the rule is to encourage diligence and to discourage delay, by refusing equitable relief when the demand is stale, leaving the complainant to his remedy at law."

So that in any view the plaintiff's action is barred.   If he knew of the acts of which he complains as early as June, 1881, he is barred both by his laches and the statute; if he negligently and persistently failed to make any inquiry, when the slightest investigation would have disclosed all he subsequently learned and when it was his plain statutory duty to do so, even within less than five years before he commenced this suit, then his laches bars his recovery.

The judgment of the circuit court in denying him relief on the ground of laches, is fully justified by the evidence and is affirmed on that ground, as well as on the ground that plaintiff can not maintain this suit as an individual stockholder.

Judgment affirmed.   All concur.