# CHARLESTON.

## OHIO RIVER RAILROAD CO. *v.* JOHNSON.

Submitted June 6, 1901.   Decided December 14, 1901.

1. JUDGMENT BY DEFAULT—*Estoppel.*
     A judgment by default, agreement, confession or trial is an
   estoppel against the relitigation of all such direct questions as
   were or might have been in issue and determined thereby in a
   collateral proceeding in equity between the same parties.   (p.
   501).

2. RAILROAD RIGHT OF WAY—*Center Line.*
     Where the grant of the right of way fifty feet wide to a rail-
   road company calls for a certain, fixed and determined center
   line, the construction of the track on either side of such center
   line will not shift such center line to the center of such track,
   and thus shift such right of way without the consent of the
   grantor.   (p. 503).

3. LOCATION OF TRACKS—*Burden of Proof.*
     In a suit involving the true location of such right of way, the
   burden is on the railroad company to prove that either it con-
   structed its track on such center line, or that the grantor con-
   sented that the center line might be shifted to the center of
   such track, wherever located.   (p. 504).

4. RAILROAD COMPANY—*Covenant—Construction of Track.*
     A railroad company is not bound, without covenant to that
   effect to construct its track on the center line of its right of way.
   (p. 504).

5. TITLE BOND—*Sufficient Grant.*
     A title bond duly acknowledged and recorded conveying a full

and free right of way, fifty feet wide, with the necessary ground for cuts and fills, to a railroad company for railroad purposes without reservation is a sufficient grant of such right of way under the laws of this State. (pp. 503, 504).

6. ACQUIRED TITLE—*Adverse Possession.*
   A railroad company can acquire title to property by adverse possession. (p. 508).

7. EQUITY—*Legal Remedies.*
   In a case of grave doubt equity will not grant relief, but will leave the parties to their legal remedies. (p. 508).

8. LACHES—*Equitable Relief.*
   Laches alone is sufficient to bar equitable relief, especially when it has been so long continued as to render the relief sought doubtful, uncertain, unfair or unjust. (p. 506).

Appeal from Circuit Court, Wood County.

Bill by the Ohio River Railroad Company against William Johnson, Jr. Decree for plaintiff, and defendant appeals.

*Reversed.*

DAVE D. JOHNSON and OKEY JOHNSON, for appellant.

HARRY P. CAMDEN, for appellee.

DENT, JUDGE:

An appeal from the circuit court of Wood County, taken by Wm. Johnson, Jr., to a decree rendered on the 27th day of April, 1899, in a chancery suit wherein appellant was defendant and the Ohio River Railroad Company was plaintiff.

In its bill and amended bill the plaintiff alleges that in April, 1882, its right of way for a railroad was obtained from the defendant, through his farm, fifty feet wide, with necessary ground for cuts and fills, according to the original line of such road as surveyed by engineer Wharton. The grant was reduced to writing, signed and acknowledged by the defendant. Afterwards there was a slight addition added thereto as follows: "It having become necessary in the construction of above railroad to use certain ground to deposit waste dirt and also to move the fence along the line of same and also being necessary to destroy some fruit trees in the grading and protecting the gravel bank mentioned above: Now, therefore, as a consideration of the same the said railroad company have paid to said Johnson the sum of

one hundred dollars, the receipt of which the said Johnson hereby acknowledges, and the said Johnson waives all objections to use of said land and destruction of said trees, and agrees to remove said fence at his own expense." That there was a provision in the grant that, "It is understood and agreed that the said railroad company must either build said roadbed far enough from the gravel bank underneath which the line runs, so as to keep said bank from washing, or shall protect said bank by a wall or in some way prevent said washing." That it was found impracticable to build such road without cutting through such gravel bank, which the company did and exposed it to washing. That in March, 1886, the defendant instituted an action for damages against the plaintiff for failing to comply with the covenants of grant, and for constructing the line of its said road outside of the fifty feet granted it according to the Wharton survey or line; that said suit was compromised by the defendant agreeing to let a judgment be entered for eight hundred dollars.

The plaintiff claims that this judgment was a satisfaction for the failure to perform its covenants, and that by reason of the payment of the damages and the possession of the road outside of the line surveyed by engineer Wharton, it acquired the absolute title to the fifty feet of land of which its railroad as constructed formed the center line without regard to the Wharton line, and that it was entitled to a deed therefor from the defendant, and that the defendant also agreed thereby to the change in its right of way thus made; that the change thus made was the mere shifting of the center line of the entire right of way, to the extent of the change aforesaid against said gravel bank from the former location on the bottom on the river side of said center line. That at the north end of the farm of the defendant is an orchard, that plaintiff instituted a suit to condemn a portion of the same for the sand and gravel, that it had the damages estimated by commissioners and paid the amount three hundred dollars thereof into court, the defendant demanding a jury trial, plaintiff while such condemnation proceedings were pending entered upon such land and removed such sand and gravel. The proceedings were dismissed and abandoned because the court held that an orchard could not be condemned. The defendant then instituted a suit to recover the value of the sand and gravel taken from his land during the pendency of the condemnation

proceedings. The plaintiff then had an accurate survey of its road bed made, and ascertained that the sand and gravel so taken was inside the fifty foot limit, including the necessary cuts or slopes to make it level, treating its railroad as constructed as the center line of such right of way, and it therefore prayed an injunction to such suit at law, and asked that defendant be required to make a deed to it for such fifty foot strip with its road as the center line, whether it corresponded with the Wharton survey or not. Defendant answered admitting nearly all the allegations of the bill. He admitted that the railroad as constructed was not only off the Wharton survey, but was to some extent and especially at the place where the sand and gravel were removed, entirely outside of the right of way which he had agreed to convey to the plaintiff. He admitted that his acquiescence for so long a period of time although under protest and recovery of damages would give the company the right to hold the land on which its road bed is constructed, but did not give them the right to go beyond the fifty feet with necessary cuts and fills, subject to the provision as to the gravel bank originally granted. That the confession of judgment and condemnation proceedings estopped the plaintiff from claiming ownership of the land from which the sand and gravel was last taken. On a hearing of the controversy the circuit court decided for the plaintiff and required the defendant to make a deed to the plaintiff covering a strip of ground fifty feet wide through the land with ground for necessary cuts and fills with the road as at present located as the center line.

There are but two propositions presented by this controversy, the establishment of both of which is on the plaintiff, and they must be cleared of all doubt before specific performance should be granted.

1st. Is the center line of the railroad track as now located on the original Wharton line or substantially so?

2d. If it is materially off of that line, did the defendant agree to the change and thereby agree that the whole right of way should be shifted so as to make the center line of the track as now constructed the center of such right of way?

As to the first proposition there can be no doubt. The vast preponderance of evidence, the confessions and admissions of the plaintiff by record and outside of the record fully establishes the fact that in the construction of the road the Whatron line

was virtually abandoned, not only so, but that the road, to some extent at least was constructed outside of the right of way, as it would have been had the Wharton line been adhered to. It is true that there is some evidence to the contrary, and certain surveyors in the employ of the plaintiff, by reliance on what they call the slope notes have endeavored to show that the Wharton line has not been materially departed from. But the solemn admissions of the plaintiff in its confession of judgment, its condemnation proceedings in its original and amended bills in this case, in its failure to produce the original plats of the right of way as made by its surveyor, showing a decisive weakness, where the law requires it to be strong, the evidence of one of the original surveyors, sustained by the preponderance of the oral testimony, places the matter beyond doubt or quibble. Nor is the plaintiff any stronger on the other proposition. It shows no contract, agreement or arrangement on the part of the defendant to permit the location of the road to change the center line of the right of way and thus shift the whole right of way. In other words, the right of way as granted was not movable, but was solid to the center of the earth. The plaintiff had the right to place its track in the center or either side thereof in so long as it did not interfere with the defendant's gravel bank; and in case it did, it was the plaintiff's duty to protect it from washing by stone wall or otherwise. This provision was undoubtedly intended to be a limitation as to cuts and fills and was a restriction in so far as said gravel bank was concerned. It certainly was never intended by the grantor that the plaintiff should cut away the front of this bank and then instead of building a stone wall or affording some other protection, cut it back to a slope of one and one-half to one as a protection. If such was the intention the stone wall provision was simply useless and nugatory. To get at the true meaning of the grant, it must be viewed as a whole and not in isolated parts. As to any actual agreement as to the change of the right of way, there is no proof whatever. It is true the defendant stood by and under protest permitted the plaintiff to construct its road off of the right of way already granted, and has allowed it to remain in its exclusive control and possession so long that he cannot now make it remove the road or claim such portion of the land outside of the right of way of which the plaintiff has had actual, notorious and exclusive possession under a claim or color of title

for over ten years, but this does not extend to such land as it has not had such actual, notorious and exclusive possession of for over ten years, so as to enable it to make cuts and fills and slopes beyond the lines of the original grant. In so far as it is off its right of way it cannot claim ground for cuts and fills under its original grant for the reason that it does not include and cover such ground. The plaintiff insists that while there was no express agreement that such right of way should be changed, yet the defendant by his conduct in standing by and permitting the road to be constructed along some other line than on the center of its right of way, and by suing and recovering damages for the sand and gravel removed, estopped himself from objecting to the shifting of the right of way, and that therefore he could be compelled to deed them such right of way. There is nothing to show that defendant had any knowledge that the construction of the tract out of the center of the right of way as granted would thereby shift such center to the center of the tract wherever it should be located. Nor is such the law, for a railroad has the right to construct its track along any line within its right of way, and the defendant could not object thereto. Nor is fifty feet in width required for only one track, but there is room for a double track and such side tracks as the corporate business may demand. The character of the ground, especially in the construction of a new railroad may require the construction of the road for convenience, to save expense and avoid slips, temporarily at least, at one side of the right of way and not in its center, and also a change in the curvature of the road may so require. The suit shows that he was resisting its encroachments beyond the right of way and the recovery therein shows that he was in the right and it was in the wrong, and operates as estoppel to its claim that it was not encroaching upon his land beyond its grant. *Rogers* v. *Rogers,* 37 W. Va. 407; *Sayres* v. *Harpold,* 33 W. Va. 556; *McCoy* v. *McCoy,* 29 W. Va. 794; *Tracy* v. *Shumate,* 22 W. Va. 475; *Corrothers* v. *Sergeant,* 20 W. Va. 351.

In that suit this plaintiff could have the very questions tried now involved in this litigation, to-wit: the true location of the Wharton line, and the right of the plaintiff to take the gravel and sand. If taken from plaintiff's land, such fact could have been as well established then as now. Plaintiff cannot complain that it did not then have the title in fee. For it could have just

as well filed its bill then as now, and better, because then the evidence would have been clearer in the minds of witnesses and the plats of the right of way might not have then been lost. A confessed or agreed judgment operates as fully as an estoppel as a judgment on the verdict of a jury. 21 Am. & En. En. Law, 267. The payment of the damages did not take away the defendant's right to the land, but established it thereto and destroyed plaintiff's claim, if any. Nor did it take away defendant's right to have the gravel bank protected by a stone wall, or otherwise, as the plaintiff appears to claim. For the defendant in his account filed with his declaration in that suit claimed pay for "sixty thousand cubic yards of earth taken from the land of defendant along the line of plaintiff's road at five cents per yard, three thousand dollars." Plaintiff agreed that judgment might go for eight hundred dollars and costs and paid the same. This does not release the plaintiff from protecting the gravel bank with a stone wall in the future, nor does it transfer to it the land from which the gravel and sand were taken. The adjudication is entirely in favor of the rights asserted by the defendant and against the rights that might then have been asserted by the plaintiff in defense of that action, and which are asserted in this, except such as were raised by the adjudication. Defendant is not estopped from claiming future damages to his gravel bank by failure of the plaintiff to protect the same from washings caused by its unlawful removal and cuttings into such bank. For he did not sue for prospective damages, but only such as had occurred up until the time of his suit, and these were all he could recover. Nor did plaintiff acquire title to defendant's land by payment of those damages, for the suit was not for the value of the land taken, but only the sand and gravel actually removed. *Watts* v. *N. W. R. R. Co.,* 38 W. Va. 201; Sutherland on Damages, ss. 1016, 1017; *Uline* v. *N. Y. C. & H. R. R. Co.,* 101 N. Y. 98; *Anderson* v. *Kernodle,* 54 Ind. 314; *Bare* v. *Hoffman,* 79 Penn. St. 71. The title to lands does not pass by judgment for plaintiff in an action of trespass. It remains in the plaintiff, and he can bring subsequent actions for the continuance of a nuisance against the same. *Thompson* v. *Morris,* 17 N. J. L. 480; *Thayer* v. *Brooks,* 17 Ohio 489. A recovery in the first action establishes the plaintiff's right. And subsequent actions may be brought for a continuance or repetition of the wrong. *Hare* v. *Hoffman,* cited. Defendant's suit was therefore

ᴌ protest against the plaintiff's location of its road off of the right of way granted, and plaintiff's agreement to a judgment therein was an admission that such protest was well founded, and by the payment of the judgment it acquired no title to any of the defendant's land. It is true that defendant did not undertake to eject plaintiff from his land, but by suit by written notice and word of mouth he continued to protest against the plaintiff's unlawful occupancy thereof. In August, 1883, the defendant presented to the plaintiff a bill for earth unlawfully removed from his land beyond the fifty foot strip granted, and at the same time notified it not to remove any more earth outside of such strip on the plea of necessity. He also plainly notified it that the road was not built on the line staked by engineer Wharton. This was shortly after the road had been constructed when everything was fresh in the minds of the witnesses, when the surveyors who located the line were still to be had, and before the plaintiff had lost the plats of the different rights of way. Fully warned, this was the time the plaintiff should have demanded its deed and permanently located the corners of its right of way, and on failure to get the same instituted its suit in chancery. Such *laches* alone ought to defeat this suit, and is certainly a strong circumstance in establishing the fact that the plaintiff was fully aware of and knowingly abandoned the Wharton line, and was endeavoring to shift the whole right of way further to the east on the lands of the defendant not included in his grant. On May 14, 1886, the defendant again notified the plaintiff in writing not to take sand, gravel or earth from his land. And then instituted the suit before mentioned to recover the value of the earth already taken. To which the plaintiff virtually confessed judgment, and admitted the wrong done. But not satisfied with this the plaintiff continued its trespass against the defendant in spite of his suits and protests. He was again forced to sue it and then after the lapse of fourteen years, when memory has become blurred, monuments obliterated and destroyed, papers misplaced and lost, witnesses scattered and dead, and the defendant on the verge of the grave, instead of meeting him in a spirit of equity and justice for which he so earnestly plead, it asks a court of equity to make a deed in fee simple for a tract of land it never purchased, never condemned, nor acquired in any legal manner, but which it appropriated by successive trespasses and breaches of its covenants, to its own uses. A

more inequitable and unjust plea could not be presented in any court. While a railroad company oftentimes deserves sympathy for the unjust manner in which it is treated by the land owners on either side of its right of way, occasionally the disregard of its over-zealous officers and agents, of private interests bring such corporations into bad repute, secure for them the enmity of those who should be their best friends, and lay them open to the sometimes just or unjust charge of being unconscionable exploiters of others rights. By condemnation proceedings, which it knew it had no right to bring because it sought the taking of an orchard, it held the defendant bound until it stripped a portion of his land of its sand, gravel and soil, and now asks a court of equity to give it a title in fee simple for the stripped land, to enable it to escape the payment of damages for its unlawful encroachments. What makes the matter more inequitable is the fact that the sand, gravel and earth was not necessary to nor used on the right of way through the defendant's land, but was taken to and used to improve the roadway through other lands. The only possible service it could be to the plaintiff through the defendant's lands was to so destroy the defendant's gravel bank as to allow the plaintiff to remove its track further eastward without being compelled to build the stone wall or other protections provided for in its original grant. So far as the Wharton line is concerned the plaintiff already has a good and sufficient grant, in its title bond which was duly acknowledged and recorded. The granting part thereof is in these words: "The said William Johnson, Jr., does hereby grant and convey unto the said Wheeling, Parkersburg and Charleston Railway Company," (plaintiff by former name) "the full and free right of way of the width of fifty feet with necessary ground for cuts and fills for the road of said company, in, upon and through the lands of the said William Johnson, Jr., and described substantially as follows, to-wit: being a line of said road as surveyed by engineer Wharton; but it is understood and agreed that the said railroad company must either build said road bed far enough from the gravel bank underneath which the line runs so as to keep said bank from washing, or shall protect said bank by a wall or in some way shall prevent washings," (the plaintiff did so by removing the bank to some other location) "which right of way is hereby granted and conveyed for the construction, building and the use of the road of said company." Under this title

bond the plaintiff already has a good title for the fifty feet of land of which the Wharton line is the center, and if its road is located on this line it needs no better title. This suit for a deed is only a pretext to transfer the controversy between the parties from a court of law into a court of equity. The defendant admits the company's right to continue its road on the present location by reason of adverse holding for ten years and his acquiescence therein, but denies its right to twenty-five feet east of such holding or any land beyond what it has in actual and exclusive possession. Continuous adverse possession of a greater quantity of land than originally conveyed is confined to and extends no further than the land thus occupied. *Corning* v. *Gould,* 16 Wendell 531; *Illinois Central Co.* v. *Houghton,* 1 L. R. A. 213. See note.

The plaintiff and defendant, through their attorneys, entered into a stipulation in the circuit court that if this cause resulted in favor of the defendant the court was to ascertain the amount of sand and gravel removed by the plaintiff since the former recovery and the value thereof at five cents per cubic yard, and judgment was to be entered therefor in the suit at law. The defendant insists that this Court should make such ascertainment and enter a decree for the same. There is no prayer for affirmative relief in the defendant's answers, and this Court is without jurisdiction to enter such decree, but must leave the matter of enforcing the stipulation with the circuit court.

The decree of the circuit court is reversed, and the bills are dismissed.

*Reversed.*