## SMITH v. SMITH

No. 4732.   Decided August 22, 1930.   (291 P. 298.)

*Hurd & Hurd,* of Salt Lake City, for appellant.

*G. Y. Wallace,* of Salt Lake City, for respondent.

EPHRAIM HANSON, J.

This is a suit for an accounting instituted by D. C. Smith against his former wife, the respondent. After judgment was entered in the cause, the plaintiff died, and the appellant was in due time appointed executrix of his last will and testament, and was substituted as plaintiff, and she appeals.

In the amended complaint it is alleged that D. C. Smith, in 1912, at Devil's Lake, N. D., "delivered, turned over and left with" respondent, certain personal property upon the agreement and understanding that she should preserve, care for, and account to him for the same, to pay over and account for the proceeds, profits, and increase thereof, or to return the same to him upon request; that frequently within the three years prior to the commencement of the action he had demanded the return of the property and the increase, profits, and proceeds of the same, and that she had refused to account.

By an amendment, after the sustaining of a demurrer, he alleged that, at the time he delivered the property to respondent, plaintiff and defendant were husband and wife, and

that he intrusted the defendant as such spouse with the said personal property as his agent or representative, and that she occupied a position of trust and confidence with reference to the same.

For answer and defense, the defendant denied plaintiff's allegation of the delivery of the property, and denied its value as alleged. She further alleged that the parties had been married in 1896; that on October 11, 1913, plaintiff commenced an action against her wherein he prayed for a decree of divorce and for general relief; that she had in said case filed a counterclaim praying that she be granted a decree of divorce from plaintiff, that she be awarded such alimony out of plaintiff's property as might be just and equitable, and for general relief; that, upon the issues so joined, a trial was had, and on April 29, 1915, a decree was entered awarding her a divorce and adjudging and determining all property rights between them at that time, and in consequence thereof the claims of plaintiff herein were barred.

She further alleged that plaintiff was guilty of laches, and that, because of his delay in commencing the action, considering the character of the property sued for, she was prejudiced in defending because of loss of proof.

The plaintiff, in his reply, admitted the marriage and the divorce, and denied all other allegations of the counterclaim. For further reply he alleged that since 1914 he had been a resident of Utah, and that defendant had been a resident of North Dakota and had not been in Utah except for a short period to attend a trial between herself and one Lulu B. Smith; that the cause of action sued on had always been owned by him. It was further alleged that the property turned over to defendant constituted practically all of his property; that during all of said time, and since about 1913, he had been in ill health and out of funds, on account thereof he had been unable to prosecute his said action against defendant in North Dakota, and that, by reason thereof and because of the provisions of sections 6479 and 6490, Comp.

Laws Utah, 1917, he ought not to be adjudged guilty of laches.

On the trial he testified in support of the allegations of his complaint, and, among other things, said that at the time of the divorce action in North Dakota he met the defendant on the street outside the courthouse and asked her to return the property, and she refused to return it or to permit him to take it off the ranch. He further testified:

"I have been in poor health for a long time and have been without funds to prosecute an action against the defendant at Devil's Lake for the recovery of my property."

The defendant, in her deposition, when shown the list of property claimed by plaintiff, testified that, so far as she knew anything about the property, it belonged to the D. C. Smith Trading Company, a corporation, and was not the property of D. C. Smith. She further testified that in the divorce action there was testimony "pro and con" concerning the property rights of the parties, and that there was testimony in reference to the personal property, and she said: "I am sure that all our property that is in dispute was threshed out in that lawsuit, and that the court made its decision after testimony had been given pro and con about who was entitled to the property and how much each should have." She said that between 1910 and 1915 more or less of this property was disposed of and used by D. C. Smith, herself, and the daughter of the parties. She further testified that, after they had separated, but before the divorce, she met plaintiff and told him to go to the house and get anything that belonged to him. She said that she did not see him take the things, but they were taken, and she knew of no one else who would take them.

Copies of the original pleadings in the divorce case were received in evidence, having been authenticated by Herman Stenseth, clerk of the court in which they were filed. From the complaint it appears that the plaintiff charged the defendant with extreme cruelty and that "for several years

last past the defendant had pursued a continuous course of fault finding and threats toward plaintiff for the purpose of aggravating and annoying the plaintiff and for the purpose of accusing (sic) and which has caused plaintiff great mental suffering," and that defendant had falsely and publicly accused him of infidelity. It was further shown that in defendant's counterclaim she alleged desertion and failure to provide as grounds for divorce; that plaintiff was possessed of personal property worth $10,000 and real property worth $20,000; that she was almost wholly without property of her own and could not earn a living for herself and daughter; and she prayed that plaintiff be required to pay such suitable alimony for the support, maintenance, and education of his family as the court should deem proper, and that she be adjudged such alimony out of plaintiff's property as should be just and equitable, and for general relief.

The court found the facts in favor of defendant and granted her a divorce, and found as a fact that plaintiff claimed to be the owner of real estate in Salt Lake City, Utah, in Butte, Mont., and in Tacoma, Wash., of the value between ten and fifteen thousand dollars, some interest in the property of the D. C. Smith Trading Company, and shares of stock in certain mining companies. The court thereupon, in the decree, awarded to defendant, out of the property of plaintiff, his interest in the D. C. Smith Trading Company, certain real estate in Butte, Mont., and certain shares of mining stocks. The decree of the North Dakota court was entered April 29, 1915, and no appeal was taken therefrom.

The parties to this action thereupon rested and submitted the cause to the court for its decision. With this evidence before it the trial court found, among other things, that, by reason of the provisions of the decree of divorce, the plaintiff was estopped and debarred from maintaining the present action; that the decree entered therein was res adjudicata of the plaintiff's claim set up in this action; and, further, the trial court concluded that, as a matter of law "the decree

of divorce mentioned in finding No. 4 operates as an estoppel by judgment against plaintiff herein and bars him from maintaining this action," and further that "plaintiff is barred by his laches from maintaining this action." Judgment was thereupon made and entered accordingly, motion for new trial was made and denied, and an appeal taken.

The appellant has assigned twenty errors, but, as we view the case, three propositions only need be considered.

First. Was the decree entered in the divorce suit res adjudicata of the matter sought to be litigated in the suit at bar? The evidence adduced at the trial clearly showed that, by reason of the divorce action, the North Dakota court had before it the question of the division of the property of the parties. Comp. Laws Utah 1917, § 3000, provides that, in actions for divorce, "the court may make such order in relation to the children, property, parties, and the maintenance of the parties and children as shall be equitable." In the absence of a showing to the contrary, it is presumed that the law of North Dakota is to the same effect. *Am. Oak Leather Co.* v. *Union Bank,* 9 Utah 87, 33 P. 246; *Dickson* v. *Mullings,* 66 Utah 282, 241 P. 840, 43 A. L. R. 136.

In order for the court to make an equitable division of property of the parties, or, which is the same thing, to allow to the wife her permanent alimony, it was the duty of both parties to fully disclose to the court just what their condition was as to property. If it should then be disclosed that the wife already had in her possession much property belonging to the husband, the court would give that fact its proper weight in deciding if she was entitled to any further award, and, if it were found that she already had in her possession more than she was in equity entitled to, the court would then have the power to oblige her to return part of it to her husband. On this point the authorities are quite uniform. *Pauly* v. *Pauly,* 69 Wis. 419, 34 N. W. 512; *Murray* v. *Murray,* 153 Ind. 14, 53 N. E. 946. The settlement of property rights between the parties is an

incident to every decree of divorce where there is any property involved. *Mott* v. *Mott*, 82 Cal. 413, 22 P. 1140, 1142.

In *Roe* v. *Roe*, 52 Kan. 724, 35 P. 808, 39 Am. St. Rep. 367, it is said that the final judgment in an action granting a divorce settles all property rights of the parties, and is a bar to action afterwards brought by either party to determine the question of alimony, or any property rights which might have been settled by such judgment. To the same effect are the following: *Muckenburg* v. *Holler*, 29 Ind. 139, 92 Am. Dec. 345; *Behrley* v. *Behrley*, 93 Ind. 255; *Hardin* v. *Hardin*, 38 Tex. 617; *Taylor* v. *Taylor*, 54 Or. 560, 103 P. 524; *Bates* v. *Bodie*, 245 U. S. 520, 38 S. Ct. 182, 62 L. Ed. 444, L. R. A. 1918C, 355; *Allen* v. *Allen*, 159 Cal. 197, 113 P. 160; *Barnett* v. *Barnett*, 9 N. M. 205, 50 P. 337.

In *Patton* v. *Loughridge*, 49 Iowa 218, the court says: "If a husband divides his estate with his wife or is swindled out of a part of it by her, and she afterward brings an action against him for divorce and alimony, the fact that she had already acquired a part of his estate would be proper to be shown in defense of her claim for alimony, either to defeat or reduce it. It would certainly not be proper to leave open a question, after a decree for alimony, as to how much of the husband's estate the wife had previously had and appropriated."

We do not now hold that the separate property rights of husband and wife are in every case adjudicated in all respects by the allowance of permanent alimony. What we hold is that under the evidence in this case it is ■ clear that the matters in issue between the parties hereto were involved and might have been raised and settled in the divorce case in North Dakota.

Second. Was the plaintiff guilty of such laches as to bar him from invoking the aid of a court of equity? The plaintiff alleged that in December, 1912, while he and his wife were living together, he delivered to her a large quantity of personal property, valued at more than $14,000, consisting of cattle and stock, agricultural implements, kitchen fur-

niture, men's wearing apparel, men's jewelry, hay and grain, shares of stock in mining companies, and, last but not least, "100 gallons of rye and bourbon proof whiskey of the value of $1,500." It is conclusively proved that about September 1, 1913, ten months thereafter, the husband deserted the wife and daughter, and failed and refused to support them; that in October, 1913, he commenced an action of divorce against her; that he moved to Utah and established his residence therein about August, 1914; that he went back to his former home, the residence of his wife, in 1915, and there prosecuted his divorce action, and made his alleged demand for the return of the property. She, he says, refused to return any property. He then slept for seven years, and on the occasion of the defendant's coming to Utah to litigate with Lulu B. Smith he instituted the present action and caused a summons to be served upon her. The court granted defendant's motion to quash the service of that summons, and the action of the court was sustained by this court. *Smith* v. *Iverson*, 63 Utah 292, 225 P. 603. Nothing further was done by plaintiff until, the defendant having recovered a judgment against Lulu B. Smith which was declared a lien on certain lots in Salt Lake City, in March, 1925, he caused a writ of garnishment to be served on Lulu B. Smith, garnishing the indebtedness of Lulu B. Smith to Lillie Smith. Thereupon plaintiff caused an alias summons to be served on the defendant in Devil's Lake, N. D., on January 23, 1926, and the defendant then entered her appearance in this cause and put in her defense.

The defendant alleges, and the court found, that the plaintiff's delay in prosecuting his action was such laches as will preclude him from being heard upon the claim presented by his complaint.

It is the contention of appellant that, "if the plaintiff's action was not barred by the statute of limitations, he could not have been guilty of laches in the commencement thereof, for where in states such as ours law and equity is adminis-

tered in the same court, equity follows the law, and the statute of limitations applies to equity actions as well as to law, and nothing less than the statutory period of limitation will operate to estop a plaintiff from maintaining, nor will it constitute laches in the commencement of his equitable action."

Our statute, Comp. Laws Utah 1917, § 6490, provides: "When a cause of action has arisen in another state or territory, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in this state, except in favor of one who has been a citizen of this state and who has held the cause of action from the time it accrued."

It is urged by the appellant that the statute of limitations does not commence to run against the plaintiff's alleged cause of action until the defendant comes into the state of Utah, and that the time of her absence from the state is not a part of the time limited for the commencement of the action. Comp. Laws Utah 1917, § 6479; *Lawson* v. *Tripp,* 34 Utah 28, 95 P. 520. It is argued that, so long as the statute of limitations has not run against plaintiff's equitable cause of action, the equitable doctrine of laches cannot apply.

Such is not the law. In *Jones Mining Co.* v. *Cardiff Mining & Milling Co.,* 56 Utah 449, 191 P. 426, 429, Mr. Justice Frick, speaking for the court says:

"While in actions at law the statute of limitations absolutely fixes the time within which actions may be brought, such is not necessarily the case in equity. The doctrine of laches is not based upon time alone."

And he then quotes with approval the text of 10 R. C. L. p. 395, wherein it is stated that

"It is a familiar doctrine that, apart from any question of statutory limitation, courts of equity will discourage laches and delay in the enforcement of rights."

In *McKnight* v. *Taylor*, 42 U. S. (1 How.) 161, 168, 11 L. Ed. 86, Chief Justice Taney said:

"There must be conscience, good faith, and reasonable diligence to call into action the powers of the court. In matters of account, where they are not barred by the act of limitations, courts of equity refuse to interfere after a considerable lapse of time, from considerations of public policy, and from the difficulty of doing entire justice when the original transactions have become obscure by time, and the evidence may be lost. The rule upon this subject must be considered as settled by the decision of this court in the case of *Piatt* v. *Vattier*, 9 Pet. 416 [9 L. Ed. 173]; and that nothing can call a court of chancery into activity but conscience, good faith, and reasonable diligence; and where these are wanting, the court is passive and does nothing; and therefore, from the beginning of equity jurisdiction, there was always a limitation of suit in that court."

There are many cases to the same effect. Some of them are *Neppach* v. *Jones,* 20 Or. 491, 26 P. 569, 849, 23 Am. St. Rep. 145; *Loomis* v. *Mo. Pac. Ry. Co.,* 165 Mo. 469, 65 S. W. 962; *Cole* v. *Birmingham Union Ry. Co.,* 143 Ala. 427, 39 So. 403; *Ohio River R. Co.* v. *Johnson,* 50 W. Va. 499, 40 S. E. 407; *Speidell* v. *Henrici* (C. C.) 15 F. 753; *Patterson* v. *Hewitt,* 11 N. M. 1, 66 P. 552, 55 L. R. A. 658, wherein Mr. Justice McFie, who wrote the opinion, gives a particularly able exposition on the subject and cites many cases in support of the rule that equity, in the exercise of its inherent power to do justice between the parties, will, when justice demands it, refuse relief, even if the time elapsed without suit is less than the statute of limitations.

Counsel for appellant, in assignment of error No. 4, seems to imply that the plaintiff was not called upon to excuse his delay in prosecuting his action, and assert that the matters set forth in the reply relating to plaintiff's illness and his lack of funds went only to explain why he did not prosecute an action in North Dakota. He alleged, in his reply that the property he turned over to defendant constituted practically all his property and that during all said time and since about 1913 he had been in ill health and out of funds, and on ac-

count thereof and of such lack of funds he had been unable to prosecute his action in North Dakota.

But it clearly appears that he went to North Dakota from Utah to prosecute his action for divorce in 1915, and the court made a finding that he then claimed to be the owner of real and personal property worth from ten to fifteen thousand dollars. The court assigned to the wife the real property in Butte, and permitted the plaintiff to keep the real property situated in Salt Lake City and in Tacoma. There appears no reason why he should not then have prosecuted his action so that the same might be tried where all the witnesses lived, where all evidence was easily accessible, and at a time when complete justice might be done between the parties. He wrongfully abandoned his wife and child in North Dakota and came to Utah; and now it is urged that, because of lack of funds to enable him to go back to North Dakota and litigate with his former wife, laches should not be imputed to him. This is a contention that can find but little or no favor in equity. Although he also alleged ill health as a reason for not returning to North Dakota to litigate, his testimony falls far short of proof of his allegation.

We think the trial court was justified in concluding that "by reason of the delay of the plaintiff in instituting this action against the defendant and loss of evidence, it is unjust and inequitable that the defendant should now be required to account to the plaintiff in this action."

Appellant further assigns as error the order of the court denying plaintiff's motion to retax costs by striking from the cost bill the item of $12.50 as notary fees for taking and transcribing the deposition of the witness Herman Stenseth, and the item of his witness fee of $2.10. The reason urged by appellant is that Comp. Laws Utah 1917, § 7088, provides that the judicial records of another state may be proved by the attestation of the clerk and the seal of the court if there be a clerk and seal, together with a certificate of the Chief Judge or presiding magistrate that the attestation is in due

form, and that therefore the expense incurred by taking the deposition was unnecessary. Assuming that the exemplified copy of the record of the judgment alone would have been competent and adequate, the form of proof provided by the foregoing provision of the statute is not exclusive of other competent methods of proof. The method adopted by respondent in the present case presented to the court not only an exemplified copy of the judgment, but an exemplified copy of the pleadings of the parties as well, so that it might be readily determined that the judgment was within the issues before the court.

No question is made as to the good faith of respondent in making the questioned disbursement. In the circumstances of this case we think the costs should be allowed, even though the method provided in the foregoing statute may have been less expensive.

The judgment of the trial court is affirmed, with costs to respondent.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and FOLLAND, JJ., concur.