# BATES *v.* BODIE.

**ERROR TO THE SUPREME COURT OF THE STATE OF NEBRASKA.**

No. 120. Argued January 4, 1918.—Decided January 21, 1918.

When a case is here upon the ground that the court below denied full faith and credit to a decree of a court of another State, a motion to dismiss the writ of error based on the proposition that the decree was accorded its due value under the statutes of the State of its rendition merely begs the question in issue and must be denied.

The principles of estoppel by judgment are reviewed in the opinion and *held* to apply (*semble* with peculiar reason) to decrees for divorce and alimony.

In a court of Arkansas, a wife, by her cross bill, sought absolute divorce, return of money lent her husband, and alimony "as the facts and law warrant, and all other proper and necessary relief" alleging that her husband owned certain real and personal property, including land in Nebraska. The decree granted the divorce as prayed, adjudged that the wife recover a stated sum "in full of alimony and all other demands set forth in cross bill," recited that such judgment was rendered by the husband's consent on condition that there be no appeal, made provisions for security, which the husband complied with, and awarded her certain personal property. After the husband had paid the judgment the wife sued him in Nebraska to obtain further alimony out of the Nebraska land, claiming that the Arkansas court had no jurisdiction to take it into consideration and did not do so. *Held*, that the face of the decree, with the cross bill, showed a plenary adjudication of the liability for alimony with consent of parties; that this was confirmed by the parties' conduct, and the weight of the testimony in this case, concerning the former proceedings; that in virtue of the consent, if not under the Arkansas statutes (Kirby's Digest, §§ 2681, 2684), the decree was within the jurisdiction of the Arkansas court, and that the action of the court below in sustaining the plaintiff's contentions and not accepting the decree as an estoppel was a denial of full faith and credit.

99 Nebraska, 253, reversed.

PLAINTIFF in error, Bates, filed a complaint in divorce against defendant in error in the chancery court of Ben-

ton County, State of Arkansas, alleging cruelty and praying for an absolute divorce.

·Defendant in error filed an answer denying the charge against her·and a cross complaint accusing him of cruelty.

In the cross complaint she alleged that Bates was the owner of real and personal property of the fair value of $75,000, consisting of 320 acres of land in York County, Nebraska, which she described, and lots in Oklahoma, and alleged further that she was the owner in her own right of $3,000, $2,500 of which she loaned to Bates, taking his notes therefor bearing interest at 8% per annum.

She prayed for an absolute· divorce, for the restoration of the ·money borrowed from her and "that the court award her such alimony as the facts and law warrant, and all other proper or necessary relief." The court, after hearing, dismissed Bates' complaint· for want of equity and granted her a divorce, and alimony was· decreed her as follows:

"It is ordered; adjudged and decreed by the court that the defendant Lucie Bates have and recover of and from the defendant [plaintiff] Edward Bates the sum of $5,111.00 in full of alimony and all other demands set forth in cross bill which judgment is rendered by the consent of the plaintiff on condition that no appeal be taken· by the defendant from .the judgment and decree herein rendered."

Certain personal property, consisting of silverware and household furniture, was adjudged to her and a lien was declared on a lot in the City of Siloam Springs, State of Arkansas, and certain notes and mortgages amounting to the sum of $2,801.06 were required to be deposited with the clerk of the court as additional security. He, however, was given the power to sell the same but required to deposit the proceeds of the sale with the clerk until the sum awarded her be paid, for which no execution was to issue for six months. It was

also decreed "that she be restored to her maiden name . . . and that the bonds of matrimony entered into" between her and Bates "be dissolved, set aside and held for naught."

She subsequently brought this suit against him in a Nebraska state court repeating the charges of cruelty against him and the proceedings in Arkansas resulting in a decree for divorce and alimony as stated above, and "that said court of chancery did not have any jurisdiction of or over the property of complainant which was situated outside of the State of Arkansas, and that in consequence of that fact in determining the amount of alimony to be granted the defendant in that suit, he was limited and prohibited from taking into account the above mentioned property situated in York County, Nebraska. Said court was limited by the laws of Arkansas from taking into consideration said property lying in York County, Nebraska, in determining the amount of alimony that should be granted to defendant in that suit, who is plaintiff herein."

The laws of the State of Arkansas further provide, she alleged, that "where the divorce is granted to the wife each party is restored to all property not disposed of at the commencement of the action, which either party obtains from or through the other during the marriage, and in consideration, or by reason thereof; and the wife so granted a divorce from the husband shall be entitled to one third of all lands of which her husband is seized of an estate of inheritance, at any time during the marriage, for her life, unless the same shall have been released by her in legal form."

She further alleged that the land in Nebraska was worth the sum of $48,000, that the amount of alimony allowed her by the Arkansas decree was largely inadequate for her support and was not such a fair proportion of the property of Bates owned by him at the date of

the decree as she then was and is entitled to in view of the circumstances. She prayed that a reasonable sum be adjudged her out of the York County property in addition to the amount allowed her by the Arkansas decree. A copy of the decree was attached to the complaint.

Bates demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, and, she declining to plead further, the cause was dismissed for want of equity. The judgment was reversed by the Supreme Court.

On the return of the case to the trial court Bates answered. He set up the proceedings in Arkansas and pleaded the decree and alleged that it was made upon full consideration of the evidence and the issues and that the court took into consideration the value of the land in York County, Nebraska, in determining the amount of alimony to be awarded to plaintiff. That the decree remained "in full force and effect, except that the amount of alimony awarded therein has been fully paid" by him. That the Arkansas court in awarding the alimony "took into consideration all of the property owned by" him, "which decree, so far as it relates to alimony, having been fully satisfied, has become a full and complete bar to further proceedings on the part of the plaintiff in this suit, defendant in that, to recover additional alimony under the laws of the State of Arkansas." And that, further, under the Constitution of the United States, the findings and decree are entitled to full faith and credit in the courts of Nebraska, and constitute a full and complete bar to plaintiff's right to recover additional alimony under the laws of the State of Nebraska.

It was adjudged and decreed that plaintiff (defendant in error here) have and recover from the defendant (plaintiff in error here) the "sum of ten thousand dol-

lars, being the amount found due her as alimony." The judgment was affirmed by the Supreme Court, to review which this writ of error was prosecuted.

*Mr. A. C. Ricketts* and *Mr. A. W. Field*, with whom *Mr. L. A. Ricketts* and *Mr. W. L. Kirkpatrick* were on the briefs, for plaintiff in error.

*Mr. Samuel P. Davidson* for defendant in error.

Mr. Justice McKenna, after stating the case as above, delivered the opinion of the court.

A motion is made to dismiss on the ground, as contended, that the decision of the Supreme Court of Nebraska was based upon a construction of the statutes of Arkansas and concluded therefrom that the District Court of Arkansas "had no jurisdiction to take the Nebraska lands of this plaintiff in error into consideration in fixing the amount of allowance to this defendant in error, and as a matter of fact did not do so." That this conclusion was reached "by reason of the peculiar statute of Arkansas which governs and controls the courts of that State in fixing the allowance of alimony to a wife, *in all cases* in which the divorce *is granted on her petition*" (italics counsel's) and the court "was limited and controlled by that statute." It is hence contended that the full faith and credit which the Constitution of the United States requires to be given to the judicial proceedings of another State was not denied to the Arkansas decree but that the Supreme Court of Nebraska, considering the statutes of Arkansas, gave to the decree the value those statutes gave to it.

But this is the question in controversy. The decision of the Supreme Court of Nebraska is challenged for not according to the decree the credit it is entitled

to and it is no answer to the challenge to say that the Supreme Court committed no error in responding to it and that, therefore, there is no federal question for review. *Andrews* v. *Andrews*, 188 U. S. 14. The motion to dismiss is denied.

The decision of the Supreme Court affirming the subsequent judgment of the district court on the merits was by a divided court and the opinion and dissenting opinion were well-reasoned and elaborate. The ultimate propositions decided were that the courts of Nebraska would entertain a suit for alimony out of real estate situated in that State after a decree for absolute divorce in another State, the latter State having no jurisdiction of the land, notwithstanding the decree awarding alimony, the decree not appearing to have been rendered by consent or not having taken such land into account; and that besides the Arkansas court had no jurisdiction to render a money judgment for alimony.

The propositions were supported and opposed by able discussion, some of which was occupied in reconciling a conflict of decision in Nebraska, a later decision made to give way to an earlier one. We are not called upon to trace or consider the reasoning of the opinion further than to determine the correctness of its elements, and this determination can be made by reference to the divorce proceedings in Arkansas and the decree of the court rendered therein.

The case is not in broad compass and depends upon the application of the quite familiar principle that determines the estoppel of judgments, and the principle would seem to have special application to a judgment for divorce and alimony. They are usually concomitants in the same suit—some cases say must be—or, rather, that as alimony is an incident of divorce, it must be awarded by the same decree that grants the separation. And it is the practice to unite them, as alimony

necessarily depends upon a variety of circumstances more adequately determined in the suit for divorce, not only the right to it but the measure of it, all circumstances upon which it depends being then naturally brought under the view and judgment, of the court. Whether, however, the right to it should be litigated in the suit for divorce, or may be sought subsequently in another, the principle is applicable that what is once adjudged cannot be tried again. And this court has established a test of the thing adjudged and the extent of its estoppel. It is: If the second action is upon the same claim or demand as that in which the judgment pleaded was rendered, the judgment is an absolute bar not only of what was decided but of what might have been decided. If the second action was upon a different claim or demand, then the judgment is an estoppel "only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." *Cromwell* v. *County of Sac*, 94 U. S. 351, 353; *Virginia-Carolina Chemical Co.* v. *Kirven*, 215 U. S. 252; *Troxell* v. *Delaware, Lackawanna & Western R. R. Co.*, 227 U. S. 434; *Radford* v. *Myers*, 231 U. S. 725; *Hart Steel Co.* v. *Railroad Supply Co.*, 244 U. S. 294.

But how find the matters in issue or the points controverted upon the determination of which the judgment was rendered? The obvious answer would seem to be that for the issues we must go to the pleadings; for the response to them and their determination, to the judgment; and each may furnish a definition of the other. *National Foundry & Pipe Works* v. *Oconto Water Supply Co.*, 183 U. S. 216, 234. If there be generality and uncertainty, to what extent there may be specification and limitation by evidence *aliunde* there is some conflict in the cases. But we are not called upon to review or reconcile them. Our rule is that an estoppel by judgment is "not only as to every matter which was

offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell* v. *County of Sac, supra*, p. 352. Is the rule applicable to the instant case?

We have set forth the proceedings in divorce in which, we have seen, there were charges of cruelty, and counter charges. There was display of property, prayers for divorce and a prayer in addition, on the part of defendant in error, that her husband, Bates, be required to restore a sum borrowed from her "and that the court award her such alimony as the facts and law warrant, and all other proper or necessary relief."

Responding to the issues thus made and the relief thus prayed, the court adjudged plaintiff in error guilty of cruelty, granted defendant in error a divorce and awarded her the sum of "$5,111.00 in full of alimony and all other demands set forth in cross bill."

There were then presented the issues of divorce and alimony; the first was made absolute, the second in a specified sum "in full," and the sum adjudged to her was made a lien on his property in the State (Arkansas). We may remark that she was awarded other property. It would seem, therefore, that there is no uncertainty upon the face of the record and that it is clear as to the issues submitted and clear as to the decision upon them.

But it is answered that—(1) The court had no jurisdiction of the Nebraska lands, and (2) that besides it did not take them into account in its judgment.

(1) Counsel make too much of this point. It may be that the Arkansas court had no jurisdiction of the Nebraska lands so as to deal with them specifically, but it had jurisdiction over plaintiff in error to require him to perform any order it might make. But even this power need not be urged. The court had jurisdiction of the controversy between the parties and all that

pertained to it, jurisdiction to determine the extent of
the property resources of plaintiff in error and what part
of them should be awarded to defendant in error.    It
was not limited to any particular sum if it had jurisdic-
tion to render a money judgment at all.

But such jurisidiction does not exist, the Supreme
Court of Nebraska decides and counsel urges.    The ar-
gument to sustain this is that the Arkansas statute [1]
(§ 2684, Kirby's Digest) provides that when a divorce
is granted to the wife the only power the court possesses
is to restore to the parties respectively the property one
may have obtained from the other during the marriage
and adjudge to the wife one-third of her husband's per-
sonal property absolutely and one-third of all the lands
whereof he was seized of an estate of inheritance at any
time during the marriage for her life unless she shall
have relinquished the same in legal form.    In other words,
against a guilty husband the courts of Arkansas were
without power to render a money judgment for alimony,
but were confined to an allotment of his personal prop-
erty and real estate in the proportions stated.    But the
court was confronted with the question of the relation
of that section to § 2681 of the Digest, which provides
that "when a decree shall be entered, the court shall
make such order touching the alimony of the wife and
care of the children, if there be any, as from the circum-
stances of the parties and the nature of the case shall

[1] "And where the divorce is granted to the wife, the court shall
make an order that each party be restored to all property not dis-
posed of at the commencement of the action which either party ob-
tained from or through the other during the marriage and in con-
sideration or by reason thereof; and the wife so granted a divorce
against the husband shall be entitled to one-third of the husband's
personal property absolutely, and one-third of all the lands whereof
her husband was seized of an estate of inheritance at any time dur-
ing the marriage for her life, unless the same shall have been relin-
quished by her in legal form." Kirby's Digest, § 2684, [1904].

be reasonable." In answer to the question the court decided that the latter section is applicable only when a divorce is granted for the fault of the wife.

Plaintiff in error contests the conclusion and strong argument may be made against it to show that the sections are reconcilable and each applicable to particular conditions. And such was the view of the dissenting members of the court. However, we are not called upon for a definitive decision on account of the view we entertain of proposition 2 and the reason which, we think, induced the court to render a money judgment.

(2) This proposition is based on the record which, the Supreme Court said, "shows that the court [Arkansas court] did not in fact make any allowance on account of the Nebraska lands," and resort is had to parol testimony for the purpose of limiting the decree. But we cannot give the testimony such strength. It is conflicting. It consists of the impressions of opposing counsel and of the parties of the opinion of the court orally delivered in direction for the decree.

The Bodie version is supported by the clerk of the court, whose recollection was that the court did not take into consideration "the land outside of Benton County." But he further testified that there was testimony of the rental value of the Nebraska lands and that "the chancellor announced that while he did not have jurisdiction over the lands in Nebraska, he did have jurisdiction over the person of Bates, as he was personally present in court. The court required Bates to deposit security for the payment of the alimony awarded. . . . As I recollect it the decree rendered was on the consent of Bates on condition that Bodie would not appeal."

On the Bates side is the evidence of the chancellor, whose opinion was the subject of the testimony of the others. He was specific and direct and the following, in summary, is his testimony: Depositions were intro-

duced showing the value of and rental income from the Nebraska lands, which were supposed to be in the name of Bates' children or in his name as trustee for his children. The decree for alimony was a lump sum of $5,111.00 "in lieu of any interest that she might have or claim she might have for any sum." (It does not appear from what this is a quotation—probably from the witness' opinion.) He, the witness, intimated what he would do in the way of a property finding and the parties agreed upon a lump sum as a final settlement, from which no appeal was to be taken. His view was that the court had jurisdiction of the parties, and held it had not of the land in Nebraska, but it did have jurisdiction to consider its value in determining the amount of alimony. Knowing, as he testified, the law, he did not think he stated that there was no law justifying the court to take into consideration the Nebraska lands. It was not the first time the proposition had been raised before him.

He remembered that Bodie claimed $2,500 as borrowed money, but the money had merged in Bates' estate. He did not understand that it entered in the decree. It was a lump-sum agreement provided cash could be got to end the controversy both as to divorce and as to property rights. Counsel adjusted it on the outside, for he was quite sure that it was not the amount the court indicated it would allow. The court understood that counsel on both sides agreed to the amount; that the judgment was a complete and amicable settlement between the parties of all property rights involved.

We must ascribe to the representation of the decree the same judicial impartiality that induced its rendition and the representation was circumstantial, without material qualification, doubt or hesitation. It accords besides with the issues in the case and the decree. As we have seen, the amount it awarded was "in full of alimony and all other demands set forth in cross bill."

It also recited that it was "rendered by the consent of the plaintiff on condition that no appeal be taken by the defendant from the judgment and decree." The amount was secured, as the chancellor declared he would secure it; it was paid as it was required to be paid.

The evidence, therefore, confirms the face of the decree and that it was rendered by consent of the parties. It is admitted that consent would give jurisdiction to the court to render a money judgment for alimony.

We think, therefore, that due faith and credit required by the Constitution of the United States was not given to the decree.

*The judgment of the Supreme Court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.*