LIBBIE RICE FARISH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF W. S. FARISH, DECEASED, LIBBIE RICE FARISH, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 110434, 110435. Promulgated October 29, 1943.

*Walter E. Barton, Esq.*, for the petitioners.
*Samuel G. Winstead, Esq.*, for the respondent.

### OPINION.

LEECH, *Judge*: These consolidated cases involve gift tax deficiencies for the calendar year 1938 as follows: Libbie Rice Farish, in the amount of $3,860.98; estate of W. S. Farish, in the amount of $4,875.

The sole question involved is whether respondent erroneously computed net prior gifts in determining the gift tax liability of the petitioners for 1938.[1]

The cases were submitted on stipulated facts which we adopt as our findings of fact.

During the period involved, prior thereto, and until November 29, 1942, the petitioner, Libbie Rice Farish, and W. S. Farish were husband and wife, residing at Houston, Texas. Each filed separate gift tax returns for the year 1938 with the collector of internal revenue for the first district of Texas. After the death of W S. Farish on November 29, 1942, his estate was duly substituted as a petitioner herein.

During the year 1938 the petitioner, Libbie Rice Farish, and W. S. Farish each made net gifts of $330,281.25.

In computing the gift tax deficiencies for the year 1938 the respondent determined the net gifts for preceding years as follows:

| | Docket No. 110434 | Docket No. 110435 |
|---|---|---|
| Total net gifts through 1935 as previously determined (amount on which the order of the Board of Tax Appeals entered October 24, 1938 was based) | $634,651.13 | $670,462.11 |
| Exclusions for calendar year 1933 erroneously allowed | 10,000.00 | 10,000.00 |
| Exclusions for calendar year 1934 erroneously allowed | 20,000.00 | 25,000.00 |
| Exclusions for calendar year 1935 erroneously allowed | 20,000.00 | 20,000.00 |
| Amount by which specific exemptions previously claimed and allowed exceeds $40,000 | 10,000.00 | 10,000.00 |
| Total | 694,651.13 | 735,462.11 |

[1] Revenue Act of 1932, secs. 502, 504, and 505, as amended; also art. 5, Regulations 79, as amended by T. D. 4996, C. B. 1940-2, pp. 295, 296. See also § 15.16 Paul's Federal Estate and Gift Taxation.

In his deficiency notices respondent supports this computation thus:

Reasons for disallowing exclusions:

None of the trusts to which transfers were made during the calendar years 1933, 1934, and 1935 provided for immediate payments of income or principal to the beneficiaries. Accordingly, for the reasons set forth above the gifts are held to have been gifts of future interests against which no exclusions are allowable and the exclusions previously claimed and allowed with respect to such gifts are now disallowed.

In 1933, 1934, and 1935 the petitioner, Libbie Rice Farish, and W. S. Farish made gifts to the same two trusts, in which W. S. Farish, Jr., and Martha Botts Farish, their son and daughter, were the respective beneficiaries. No deficiencies in gift taxes were determined by respondent against either of them because of the 1933 gifts, but deficiencies were determined against both of them for their 1934 and 1935 gifts.

Petitioner, Libbie Rice Farish, in proceedings docketed at number 88366, and W. S. Farish, in a proceeding docketed at number 88367, contested all of these deficiencies before the United States Board of Tax Appeals. The deficiency letters determining those gift tax deficiencies, so far as here pertinent, each contained the following:

It appears from the provisions of the trust deeds in question that the income from the trusts shall accumulate unconditionally for ten or more years. Accordingly, the donees' interests or estates "are limited to commence in use, possession or enjoyment at some future date or time" and these gifts were of future interests against which no exclusions are allowable.

The assignments of error in the proceeding entered at Docket No. 88366 contain, *inter alia*, the following:

(1) Respondent erred in holding that the gifts which petitioner made in 1934 and 1935 to certain trusts represented future interests in property, instead of holding as he should have done that said gifts represented present interests in property.

(2) Respondent erred in failing and refusing to allow the petitioner a total exclusion of $20,000 from gross gifts in 1934 and a total exclusion of $20,000 from gross gifts in 1935, representing $5,000 in the case of gifts made to each trust in 1934 and 1935, respectively.

*       *       *       *       *       *       *

(6) The respondent erred in allowing the petitioner a specific exemption of only $10,000 in 1934 instead of allowing as he should of [*sic*] done a specific exemption of $20,000 for said year.

The assignments of error in the proceeding entered at Docket No. 88367 contain, *inter alia*, the following:

(1) Respondent erred in holding that the gifts which petitioner made in 1934 and 1935 to certain trusts represented future interests in property, instead of holding as he should have done that said gifts represented present interests in property.

(2) Respondent erred in failing and refusing to allow the petitioner a total exclusion of $25,000 from gross gifts in 1934 and a total exclusion of $20,000 from gross gifts in 1935, representing $5,000 in the case of gifts made to each trust in 1934 and 1935, respectively.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(6) The respondent erred in allowing the petitioner a specific exemption of only $10,000 in 1934 instead of allowing as he should have done a specific exemption of $20,000 for said year.

Those proceedings, consolidated for hearing, were regularly called for hearing, at which time the facts were stipulated. Included in that stipulation is the following:

II. During the years 1934 and 1935, each of the petitioners made gifts as follows:

| To Whom Given | Value of Gift 1934 | 1935 |
| --- | --- | --- |
| (a) To W. S. Farish, Sr., Trustee, under a certain trading trust dated February 19, 1934 for the use and benefit of the petitioners' son, William Stamps Farish, Jr. | $59,200.31 | $115,734.27 |
| (b) To W. S. Farish, Sr., Trustee, under a certain trading trust dated February 19, 1934 for the use and benefit of the petitioners' daughter, Martha Botts Farish | 59,200.33 | 115,734.26 |
| (c) To W. S. Farish & Company, Trustee, under a certain Trust No. 2 dated February 19, 1934 for the use and benefit of petitioners' son, William Stamps Farish, Jr., and daughter, Martha Botts Farish | 118,400.64 | 226,381.32 |

These foregoing gifts were made from the community property of the petitioners.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

VIII. The petitioners each claimed an exclusion in his or her gift tax return for 1934 of $5,000.00 for each of said gifts, which are referred to in II (a) and (b), supra. In addition thereto, the petitioners each claimed an exclusion of $10,000.00 on account of said gifts referred to in II (c), supra, on the theory that said trust instrument referred to in II (c) created two separate and distinct trusts—one for the use and benefit of the petitioners' son, W. S. Farish, Jr., and one for the use and benefit of the petitioners' daughter, Martha Botts Farish. The respondent disallowed all of said exclusions claimed by each of the petitioners. The petitioner, W. S. Farish, also claimed an exclusion of $5,000.00 on account of the gift referred to in IV, supra, which the respondent allowed.

IX. In 1933, the petitioner, W. S. Farish, made a gift of community property of $40,000.00 to his son, W. S. Farish, Jr., and the petitioner, Libbie Rice Farish, made a gift of community property of $40,000.00 to her daughter, Martha Botts Farish. Each petitioner claimed an exclusion of $10,000.00 and a specific exemption of $30,000.00 in his or her gift tax return for 1933. In his or [sic] gift tax return for 1934, each of the petitioners claimed a specific exemption of $20,000.00, representing the unused portion of $50,000.00 specific exemption allowed by Sec. 505 (a) (1) of the Revenue Act of 1932. In the case of each petitioner for 1934, the respondent disallowed. $10,000.00 of said specific exemption of $20,000.00 which each petitioner claimed, and respondent allowed a specific

exemption to each petitioner of $10,000.00 for 1934. It is agreed that if each of the petitioners was entitled to an exclusion of $10,000.00 in 1933 on account of the gifts made by him or her in 1933, each petitioner is entitled to a specific exemption of $20,000.00 for the year 1934. If the respondent correctly disallowed said exclusions of $10,000.00 in the case of each petitioner for 1933, it is agreed that each of the petitioners is entitled to a specific exemption of $10,000.00 for the year 1934.

On brief, the petitioners in those proceedings contended, *inter alia:*

(1) The gifts [to these trusts] were present interests in property.
(2) Petitioner, W. S. Farish, was entitled to total exclusions of $25,000 in 1934 and $20,000 in 1935; and petitioner, Libbie Rice Farish, was entitled to total exclusions of $20,000 for each of said years.

\*      \*      \*      \*      \*      \*      \*

(5) Petitioners are entitled to a specific exemption of $20,000 each in 1934.

The opinion of the then United States Board of Tax Appeals in those proceedings, promulgated September 28, 1938, and reported in 38 B. T. A. at page 638,[2] contains the following:

The facts were stipulated. In his brief the respondent states the questions presented as follows:

Did the Commissioner properly determine that the petitioner, W. S. Farish, residing in Texas, should properly include in his taxable gifts the full value of certain insurance policies, rather than only one-half thereof, as contended by petitioner?

The petition in Docket No. 88367 raises the question of the value of certain insurance policies. This question, however, is waived in the petitioner's brief (p. 2). The petitions also raise the question of the extent of the exclusions to which the petitioners are entitled in 1934 and 1935. The respondent concedes the correctness of the taxpayers' contentions in this respect. Petitions also raise the question of the extent of the specific exemption to which the petitioners are entitled in the year 1934. The respondent also concedes the correctness of the taxpayers' contentions in this respect.

The concessions leave only the question presented above.

After summarizing the facts on another issue, involving the gifts of an insurance policy, and deciding it, the opinion then directed that judgments should be entered under Rule 50.

Pursuant to that order, similar recomputations were filed by the respective parties, both of which expressly gave effect to exclusions for each of the gifts made by the petitioners in 1933, 1934, and 1935, which are the same gifts to the same trusts as are here involved. Judgments were entered in accordance with those recomputations.

The Revenue Act of 1932, Title III—GIFT TAX, as amended, is controlling.[3] Section 501 (a) involves the tax "upon the transfer during such calendar year [after 1932] by any individual, resident or

---

[2] Affirmed on appeal which did not include the present issue.
[3] See footnote 1.

nonresident, of property by gift." Section 502 sets out the method for computing the tax, which is that it:

\* \* \* shall be in an amount equal to the excess of—

(1) a tax, computed in accordance with the Rate Schedule hereinafter set forth, on the aggregate sum of the net gifts for such calendar year and for each of the preceding calendar years, over

(2) a tax computed in accordance with the Rate Schedule, on the aggregate sum of the net gifts for each of the preceding calendar years.

Section 504 (a), entitled "NET GIFTS," defines that term as the total amount of gifts made during the calendar year, less the deductions provided by section 505.

Subsection (b) of section 504, entitled "GIFTS LESS THAN $5,000," then provided:

\* \* \* In the case of gifts (other than of future interests in property) made to any person by the donor during the calendar year, the first $5,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year.

This section was amended by section 505 (a) of the Revenue Act of 1938 by reducing that exclusion from $5,000 to $4,000 and adding "gifts in trust" to the parenthetical provision contained in the earlier act. The latter act also contained the following provision, section 505 (b), referring to 505 (a) therein:

(b) The amendment made by subsection (a) of this section shall be applied in computing the tax for the calendar year 1939 and each calendar year thereafter (but not the tax for the calendar year 1938 or a previous calendar year), but such amendment shall not be applied in any computations in respect of the calendar year 1938 and previous calendar years for the purpose of computing the tax for the calendar year 1939 or any calendar year thereafter.

Section 505 of the 1932 Act, entitled "DEDUCTIONS," then provides for the deductions that shall be allowable in computing net gifts which, *inter alia*, include in section 505 (a) (1) "SPECIFIC EXEMPTION—An exemption of $50,000, less the aggregate of the amounts claimed and allowed as specific exemption for preceding calendar years." The amount of this specific exemption was reduced to $40,000 by the Revenue Act of 1935, section 301 (b). That act also added the following provision as section 301 (c):

The amendments made by subsections (a) and (b) of this section shall be applied in computing the tax for the calendar year 1936 and each calendar year thereafter (but not the tax for the calendar year 1935 or a previous calendar year), and such amendments shall be applied in all computations in respect of the calendar year 1935 and previous calendar years for the purpose of computing the tax for the calendar year 1936 or any calendar year thereafter.

The petitioners do not contend that respondent is estopped, by our decisions involving the 1934 and 1935 gift tax deficiencies, from denying exclusions from the gifts made by petitioners to the same trusts

in the taxable year. See *Blaffer* v. *Commissioner*, 134 Fed. (2d) 389. They have pleaded, however, and now argue that, since the judgments entered in the consolidated proceedings, involving the deficiencies for those earlier years, determined net gifts for 1933, 1934, and 1935 to be in the sum of $634,651.13 in the case of Libbie Rice Farish and $670,-462.11 in the case of the estate of W. S. Farish, the respondent is estopped from recomputing such prior net gifts in greater amounts for the purpose of determining the tax upon gifts made by petitioners to the same trusts in the year 1938, which are here involved. Respondent denies the validity of the estoppel pleaded and contends that his action is supported by his regulations. See Regulations 79, art. 5. This dispute thus necessarily involves the propriety of two distinct actions of respondent, i. e., (1) disallowing exclusions for those earlier years, and (2) reducing the exemption already allowed for those earlier years. We therefore discuss first the correctness of respondent's action in reference to the exclusions.

At the outset, we think the statement of the Supreme Court in *Hart Steel Co.* v. *Railroad Supply Co.*, 244 U. S. 294, may be pertinent. The Supreme Court there said:

This doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, "of public policy and of private peace," which should be cordially regarded and enforced by the courts to the end that rights once established by the final judgment of a court of competent jurisdiction shall be recognized by those who are bound by it in every way, wherever the judgment is entitled to respect. *Kessler* v. *Eldred, supra.*

The doctrine is stated in *United States* v. *Moser*, 266 U. S. 236, thus:

The general principles are well settled, and need not be discussed. The scope of their application depends upon whether the question arises in a subsequent action between the same parties upon the same claim or demand or upon a different claim or demand. In the former case a judgment upon the merits constituted an absolute bar to the subsequent action. In the latter case the inquiry is whether the point or question presented for determination in the subsequent action is the same as that litigated in the original action. *Cromwell* v. *County of Sac*, 94 U. S. 351, 352–353. The rule is succinctly stated in *Southern Pacific R. R. Co.* v. *United States*, 168 U. S. 1, 48:

"The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified."

See also *New Orleans* v. *Citizens' Bank*, 167 U. S. 371, 396; *Myers* v. *International Trust Co.*, 263 U. S. 64.

It is pertinent to note that "To avoid confusing the two rules of conclusiveness, it is usual to refer to the first as res judicata and to the

second as estoppel by judgment." *Kelliher* v. *Stone & Webster*, 75 Fed. (2d) 331. And, as was said in *Masters* v. *City of Rainier*, 238 Fed. 827, at page 833:

> Another principle is well stated in *Burlen* v. *Shannon*, 99 Mass. 200, 203 (96 Am. Dec. 733) as follows:
> "The estoppel is not confined to the judgment, but extends to all facts involved in it as necessary steps or the groundwork upon which it must have been founded. It is allowable to reason back from a judgment to the basis on which it stands, 'upon the obvious principle that, where a conclusion is indisputable and could have been drawn only from certain premises, the premises are equally indisputable with the conclusion.'"

The ultimate issue in the earlier proceedings before us was the amount of gift taxes payable by the petitioner, Libbie Rice Farish, and W. S. Farish, respectively, on transfers each made to certain trusts in 1934 and 1935. Here, the ultimate issue is the amount of gift taxes payable by the petitioner, Libbie Rice Farish, and W. S. Farish's estate, upon transfers the former and the decedent made in 1938 to the same trusts. That issue, of course, in both proceedings was and is an issue of law. Under the provisions of the gift tax statute, for the purpose of fixing the rate to be used in the computation of the tax contested in both of these proceedings, an essential fact directly involved is the amounts of "net gifts" for the preceding taxable years during which the act was effective as well as the "net gift" for the tax year or years. See footnote 1. *Lillian Seeligson Winterbotham*, 46 B. T. A. 972, and *Leo Wallerstein*, 2 T. C. 542.

In finding this fact it is obviously essential to determine the fact of the amount of the "net gifts" effected in 1933, 1934, and 1935 by the petitioner, Libbie Rice Farish, and W. S. Farish by means of these trusts. Since, under section 504 (b), a specified amount is not considered a gift at all for the purposes of the act, the determination of "net gifts" turns necessarily first upon the amounts of the "gifts" recognized as such by section 504 (a). Those amounts depend upon the answer to the question of the number of exclusions, if any, to which each taxpayer is entitled for each of those years. This may well be a question of law or at least a question of mixed law and fact, as respondent argues. But that does not preclude the pleaded estoppel. *Warner* v. *Tennessee Products Corporation*, 57 Fed. (2d) 642; certiorari denied, 287 U. S. 632; *Anna Eliza Masterson*, 1 T. C. 315 (on appeal, C. C. A., 5th Cir.). That this question was decided wrongly in the earlier case is likewise immaterial. The essence of the plea is that it was decided. *Pryor & Lockhart Development Co.*, 34 B. T. A. 687.[4]

Although the cause of action here even in so far as it involves the earlier gifts is different from that involved in the earlier proceedings,

---

[4] In *Lillian Seeligson Winterbotham*, *supra*, and *Leo Wallerstein*, *supra*, no question of estoppel was involved.

we think respondent is estopped. In determining the contested gift tax deficiencies for 1934 and 1935 there respondent computed the "net gifts" for each of those years and for 1933, effected by the petitioner, Libbie Rice Farish, and W. S. Farish, by means of the same trusts as those with which we are here concerned. He did this, *inter alia*, by disallowing any exclusions to either of the donors in computing the amounts of their "gifts" for those years, and charging the amounts so claimed to the specific exemption to which each donor was entitled. He supported that computation and disallowance on the very ground upon which he here rests his equally necessary computation of "gifts" in determining "net gifts" for those earlier years to the same trusts by the same donors under the same facts. That ground is that "These gifts were of future interests against which no exclusions are allowable."

That action of the respondent was assigned as error in the petitions instituting the earlier proceedings. In resolving the disputed question of fact essential to the decision in those proceedings, i. e., the amount of the "gifts" to the same trusts as are involved here in 1933, 1934, and 1935, the issue was therefore whether those transfers were gifts of future interests against which no exclusions were allowable. See *Last Chance Mining Co.* v. *Tyler Mining Co.*, 157 U. S. 683; *House* v. *Lockwood*, 137 N. Y. 259; 33 N. E. 595. That is exactly the issue here in so far as the contested exclusions are concerned. It is submitted here on the same evidence. The same statutory provision is applicable.[5] In fact respondent apparently agrees that all this is so. Moreover, he apparently goes further and concedes, and again we agree, that such issue was decided in those earlier proceedings. *Bates* v. *Bodie*, 245 U. S. 520; *Last Chance Mining Co.* v. *Tyler Mining Co.*, *supra.* Cf. *Hartford Empire Co.*, 43 B. T. A. 113; affd., 137 Fed. (2d) 540.

Respondent bases his opposition to the application of the rule of estoppel by judgment here upon the ground that our decision was entered upon a concession and that it was therefore not decided "upon the merits."

It is true that we have refused to apply the rule when the record did not disclose the basis therefor. See *Almours Securities Inc.*, 35 B. T. A. 61; affd., 91 Fed. (2d) 427; certiorari denied, 302 U. S. 765; rehearing denied, 303 U. S. 666 (affirmance did not involve *res adjudicata*). We have also refused to invoke the rule where our decision was entered pursuant to a mandate from the Circuit Court of Appeals. *Volunteer State Life Insurance Co.*, 35 B. T. A., 491; remanded, 110 Fed. (2d) 879; certiorari denied, 310 U. S. 636. But where the record as in the earlier proceeding, the judgment in which is pleaded here,

---

[5] See Revenue Act of 1938, sec. 505 (b), *supra.*

discloses that the sole issue there litigated and decided is that raised here upon identical facts, we think the rule is applicable. *Arthur Curtiss James*, 31 B. T. A. 712. This is in conformity with the expressed doctrine of the United States Supreme Court. Thus in *United States* v. *Parker*, 120 U. S. 89, in which the judgment contained a recital "that the subject-matter of the suit had been adjusted and settled by the parties" and it was contended that such judgment was not upon the merits, the Court said:

* * * And it has been held that a judgment of dismissal, when based upon and entered in pursuance of the agreement of the parties, must be understood, in the absence of anything to the contrary expressed in the agreement and contained in the judgment itself, to amount to such an adjustment of the merits of the controversy, by the parties themselves through the judgment of the court, as will constitute a defence to another action afterwards brought upon the same cause of action. *Bank of Commonwealth* v. *Hopkins*, 2 Dana, 395; *Merritt* v. *Campbell*, 47 Cal. 542. It is clearly so, when, as here, the judgment recites that the subject-matter of the suit had been adjusted and settled by the parties. * * *.

See also *Mutual Life Insurance Co.* v. *O'Donnell*, 146 N. Y. 275; 40 N. E. 787; *Partridge* v. *Shepard*, 71 Cal. 470; 12 Pac. 480.

It is true that *res adjudicata* was pleaded in the *Parker* case, *supra*, in a second action between the same parties on the same cause of action. Admittedly the pleaded judgment "on the merits" in such a case has a broader effect than where pleaded as an estoppel in a different cause of action. *United States* v. *Moser, supra*. But no reason or authority has been called to our attention, and we know of none, even suggesting the conclusion that the meaning of decision "on the merits" or that the evidence or procedure supporting a decision "on the merits" in such a case is different than when the pleaded decision was entered in another cause of action between the same parties. As the Supreme Court said in *Last Chance Mining Co.* v. *Tyler Mining Co., supra*, at page 691, in discussing estoppel in a different cause of action: "The essence of estoppel by judgment is that there has been a judicial determination of a fact and the question always is has there been such determination, and not upon what evidence or by what means it was reached." See also *McGowan* v. *Parish*, 237 U. S. 285; *Harding* v. *Harding*, 198 U. S. 317; *United States* v. *Parker, supra; Pick Mfg. Co.* v. *General Motors Corporation*, 80 Fed. (2d) 639; *O'Cedar Corporation* v. *F. W. Woolworth Co.*, 66 Fed. (2d) 363; *Warner* v. *Tennessee Products Corporation, supra; Woods Bros. Const. Co.* v. *Yankton County*, 54 Fed. (2d) 304; *Rector* v. *Suncrest Lumber Co.*, 52 Fed. (2d) 946; *Utah Power & Light Co.* v. *United States*, 42 Fed. (2d) 304.

In *Last Chance Mining Co.* v. *Tyler Mining Co., supra*, the parties were litigating the question of the superiority of their respective rights to certain mineral lands. The answer to this question de-

pended upon the determination of the fact of which claim had priority of location. In an earlier court action between the same parties upon a different cause of action in which the same question was raised and the answer to which was there essential, the defendant answered but before judgment withdrew his answer and did not appear at the hearing. After taking testimony the court made a finding of fact that the claim had already been located by the plaintiff when the defendant located his claim upon it and that the plaintiff was therefore the owner of the disputed tract, and entitled to possession of it from the defendant. That judgment was pleaded as an estoppel in the second action and, ultimately, the plea was denied by the lower courts.

In reversing that action the Supreme Court said:

The withdrawal by defendants of their answer may have prevented any judicial determination as to the specific facts set up therein in defence or avoidance of plaintiff's claim. *Finnegan* v. *Campbell*, 74 Iowa, 158. But such withdrawal was not operative to take out of the case the complaint, or the allegations of fact therein contained, or to prevent a judicial determination of those facts.

\* \* \* \* \* \* \*

\* \* \* When an action has been instituted in the court to determine such a controversy, it is not within the competency of the defendant to take himself out of court. A defendant may withdraw his answer and thus let judgment go by default, but he does not thereby deprive the court of a jurisdiction which has been once established. The rule applicable here is no different from that which applies in any other case. When a defendant has by personal service or appearance once been brought into a court, having jurisdiction of the subject-matter, he cannot at his election oust the court of jurisdiction, or prevent the case from passing to judgment. *Whether he confesses plaintiff's right* or defaults in answer, or files a denial or a disclaimer, is alike immaterial. In each and all of these cases the jurisdiction remains and the court may enter the appropriate judgment. Where the defendant simply withdraws his answer, as was this case, the court is under no obligations to inquire whether he has lost all interest, but may proceed to judgment, and its judgment is an adjudication of the rights of the plaintiff, as shown by the complaint and testimony. \* \* \* After such suit has been commenced and the defendants have been made parties thereto, and the court has proceeded to judgment, will the defendants be heard to say that that judgment amounts to nothing? We are clearly of the opinion that this cannot be tolerated, that the judgment was in all respects regular, that it was conclusive as to the particular ground in controversy, and binding by way of estoppel as to every fact necessarily determined by it, and that priority of location was one fact so determined. There was error, therefore, in excluding the record of that judgment. [Emphasis supplied.]

Since the record discloses that all of the facts here were before the Board of Tax Appeals by stipulation in the earlier proceedings, we think that case is directly in point.

The position of the respondent, we think, ignores the rule that we were not bound by the concession of respondent in the earlier proceedings. (*Swift & Co.* v. *Hocking Valley Ry. Co.*, 243 U. S. 281; *Hackfeld & Co.* v. *United States*, 197 U. S. 442; *William Ernest*

*Seatree*, 25 B. T. A. 396. See *T. K. Harris Co.*, 38 B. T. A. 383.) The entry of judgments thereon necessarily involved the exercise of our judicial discretion. Since that is so, our judgments entered in the earlier proceedings were not *pro forma*, but were adjudications "upon the merits." It follows that respondent is estopped by our former judgments from including in his present computation of "net gifts" for 1933, 1934, and 1935, exclusions previously allowed for those years, unless the controlling gift tax provisions of the statute (*supra*) require otherwise.

It is true the Senate Finance Committee Report accompanying the Revenue Bill of 1932 [6] when it was introduced in the Senate, which included the original gift tax provisions, indicated that the computation of the tax thereunder was intended to result:

* * * in a tax imposed on a cumulative basis. , In short, the design is to impose a tax which measurably approaches the estate tax which would have been payable on the donor's death had the gifts not been made and the property given had constituted his estate at his death. * * *

But the entire scheme of the act treats amounts excluded by the statute from the gift as not being a part of the gift at all for tax purposes. And there is nothing in the Report of the Ways and Means Committee, *supra*, nor any other reports of Congressional committees having to do with the original gift tax act or the amendments thereto (see footnote 7) which is contradictory. Exclusions could be taken only from a present gift when made and could not be postponed. There is no limitation on their number. On the other hand, the exemption has always been considered as a part of the gift for tax purposes. A claim for its benefit may be postponed and when claimed it is simply deducted from the "gift" in the computation of the "net gift." (See quoted provisions of the gift tax sections, *supra*.) This deliberate, continued, and consistent distinction in the character and treatment of exclusions and exemptions is emphasized by comparing section 505 (b) of the Revenue Act of 1938 and section 301 (c) of the Revenue Act of 1935. Our conclusion therefore is that the law, at most, does not require us to disregard our judgments in the earlier proceedings involving exclusions for 1933, 1934, and 1935 in computing prior "net gifts" for the purpose of determining the disputed gift tax on the 1938 gift. We think they can not be legally ignored in that computation. Nor are respondent's regulations contrary. See Regulations 79, art. 5. And, if they were, they would be without statutory authorization. We decided that certain amounts were within the statutory exclusions for 1933, 1934, and 1935. Those amounts are therefore no part of those gifts for gift tax pur-

---

[6] 1932 S. R. 665, 72d Cong., 1st sess.

[7] 1932, H. R. 708, 72d Cong., 1st sess.; S. R. 665, 72d Cong., 1st sess.; 1938, H. R. 1860, 75th Cong., 3d sess.; S. R. 1567, 75th Cong. 3d sess.

poses. And the respondent can not make them so by regulation. *Manhattan Co.* v. *Commissioner*, 297 U. S. 129; *International Ry. Co.* v. *Davidson*, 257 U. S. 506; *Montague, Miles & Co.*, 38 B. T. A. 144.

A different result, we think, follows as to respondent's action in increasing "net gifts" for 1933, 1934, and 1935 by $10,000, the amount by which the specific exemption claimed and allowed under the law then effective, Revenue Act of 1932, section 505 (a) (1), exceeded the exemption allowable under the amendment to that provision effected by section 301 (b) of the Revenue Act of 1935, which was controlling in the tax year, 1938.

As has been discussed, exemptions are treated very differently from exclusions in the gift tax provisions. In contradistinction with that of exclusions, the treatment of exemptions is one of the means used to accomplish the legislative purpose of the gift tax law. (See footnote 7.)

The regulations of respondent support his treatment of exemptions here. See Regulations 79, art. 5. We think that regulation, in so far as exemptions are concerned, is a reasonable interpretation of section 301 (c) of the Revenue Act of 1935, *supra*. See also Report of Ways and Means Committee which accompanied both the 1932 and 1938 Revenue Acts.[8] Moreover, these regulations have appeared unchanged in this particular in both regulations construing the gift tax provisions issued since the Revenue Act of 1932 was amended by the Act of 1935.[9] And Congress has since amended portions of the gift tax sections of the Revenue Act of 1932 and did not there alter in any way such method of computing the tax.[10] In fact, it has since substantially reenacted section 301 (c), *supra*.[11] See *United States* v. *Dakota-Montana Oil Co.*, 288 U. S. 459; *Murphy Oil Co.* v. *Burnet*, 287 U. S. 299.

The exemption question therefore here is merely whether, in the determination of those prior "net gifts" the amount of the specific exemption to be deducted should be limited to $40,000 as provided by section 301 (b) of the Revenue Act of 1935, amending section 501 (a) (1) of the Revenue Act of 1932, *despite* the fact that the rights of the petitioner, Libbie Rice Farish, and W. S. Farish to the larger exemption permitted by the 1932 Act in computing prior "net gifts" in determining their gift taxes for 1934 and 1935 had been adjudicated in the earlier proceedings involving their gift taxes for those years. Obviously that question could not have been and was neither litigated nor decided in the prior proceedings. Respondent is therefore not

[7] 1932, H. R. 708, 72d Cong., 1st sess.; S. R. 665, 72d Cong., 1st sess.; 1938, H. R. 1860, 75th Cong., 3d sess.; S. R. 1567, 75th Cong. 3d sess.

[8] Footnote 7.

[9] Regulations 79, art. 5; Regulations 108, art. 86.7.

[10] See sec. 505, Revenue Act of 1938, *supra*.

[11] See I. R. C., sec. 1004.

estopped in his contested action under this branch of the case. *Bates* v. *Bodie, supra; Hartford Empire Co., supra.*

Respondent is accordingly affirmed in his disputed action involved in this phase of the case.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

SMITH, *J.*, dissenting: The petitioners each made net gifts of $330,-281.25 in 1938 to trusts theretofore created. The gift tax liability of each is:

\* \* \* the excess of—

(1) a tax, computed in accordance with the Rate Schedule hereinafter set forth, on the aggregate sum of the net gifts for such calendar year and for each of the preceding calendar years, over

(2) a tax computed in accordance with the Rate Schedule, on the aggregate sum of the net gifts for each of the preceding calendar years.

Prior to 1938 Libby Rice Farish and W. S. Farish had made gifts to these trusts. The question in issue is the amount of the net gifts made by each to the trusts in the years prior to 1938. The respondent has determined that the amount of the net prior gifts made by Libby Rice Farish was $694,651.13 and by W. S. Farish was $735,462.11. The petitioners contend that the correct amounts of the net prior gifts were $634,651.13 and $670,462.11. The majority opinion holds that the net prior gifts were these amounts plus $10,000 in each instance, or $644,651.13 and $680,462.11, respectively. It holds that the respondent is correct in reducing the specific exemption applicable to prior years from $50,000 to $40,000 in each case, but that the respondent. is not correct in including in the net prior gifts $50,000 and $55,000, respectively, of exclusions from the gifts which were erroneously allowed by the respondent in the proceedings involving gift tax deficiencies of the petitioners for the years 1934 and 1935 settled by the decisions of the Board of Tax Appeals in 38 B. T. A. 638. It holds that by reason of the concession made by the respondent in the settlement of those tax deficiencies the errors therein made must be continued into the year 1938.

I do not think that this is correct. The prior litigation was disposed of by the decisions of the Board of Tax Appeals above referred to. At that time there was much doubt as to whether gifts to a trust which were not to be enjoyed by the beneficiaries until a future date were gifts of future interests in property. The issue was finally decided by the Supreme Court in *United States* v. *Pelzer*, 312 U. S. 399, in 1941. Under the opinion in that case the petitioners would not be entitled to the exclusions allowed.

It seems to me that the net prior gifts in the case of each of these

donors must be determined in accordance with the statute which was in effect in the determination of the gift tax liabilities for 1938. The net prior gifts for the purpose of the determination of the tax liabilities for 1938 were not affected by the erroneous interpretation of the statute for prior years. According to the reasoning of the majority opinion an error made, regardless of the amount, in the determination of the net gifts for prior years becomes fixed for all time. I do not think that this is correct. The net prior gifts of these petitioners were in the amounts of $694,651.13 and $735,462.11.

The question as to whether the petitioners were entitled to exclusions from gift tax for 1934 and 1935 was not decided by the Board in the proceedings at 38 B. T. A. 638. The respondent conceded that they were in so far as the determinations of deficiencies in gift tax for 1934 and 1935 were concerned. The decision of the Supreme Court in the *Pelzer* case conclusively shows that they were not. As I understand it, the petitioners now concede that they were not. Their only contention is that under the doctrine of *res adjudicata* the correct deficiencies for 1938 may not be found.

I do not think that the doctrine has application to such a situation. The question as to whether the petitioners were entitled to the claimed exclusions for 1934 and 1935 was not considered by the Board at 38 B. T. A. 638. We are here dealing with a different cause of action from that there decided. See *Hartford Empire Co.* v. *Commissioner*, *supra*. The amount of the "net prior gifts" must be determined in accordance with the law as construed by the Supreme Court. The respondent's determinations should be approved.