ALICE G. K. KLEBERG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102254. Promulgated November 25, 1943.

*Leroy G. Denman, Esq.*, for the petitioner.
*Homer J. Fisher, Esq.*, for the respondent.

OPINION.

Leech, *Judge*: The petitioner assigned as error the respondent's disallowance of depletion at the rate of 27½ percent on the sum of $24,656.92 received from an oil and gas lease of her 30,439.23 acres of land, amounting to $6,780.65. The respondent concedes, and rightly so, that petitioner is entitled to such deduction under our former decision in *Alice G. K. Kleberg*, 43 B. T. A. 277. Effect will be given thereto under Rule 50.

The first contested issue is whether the petitioner is entitled to the application of the capital gains rates and a holding period of 10 years in computing income tax upon the receipt of the sum of $37,335.37 in 1934. This amount represents a community interest in the second installment payment received for the petitioner's transfer of her right to receive future rentals from the Humble Oil & Refining Co. to the Henrietta M. King estate. In the alternative, petitioner claims the right to deduct 27½ percent depletion on that sum. We do not think it is necessary to consider the alternative issue. In a former proceeding between these same parties we had before us the question whether the petitioner was entitled to depletion at the rate of 27½ percent on the first installment of moneys received in 1933 under this same contract with the executors and trustees of the Henrietta M. King estate, dated September 26, 1933. We there construed the contract as one of sale of her interests to the King estate and denied the right to a depletion deduction. The identical contract and the same facts are involved in the present issue, except the question here relates to the receipt in 1934 of the second and final installment payment under the said contract. *Res adjudicata* is not pleaded, but the reasons which we gave in our former decision for construing the contract to be a sale are persuasive. We see no reason for departure therefrom. *Knights of Pythias* v. *Smyth*, 245 U. S. 594, 596. We hold that the contract constituted a sale of an asset. Are the capital gains sections of the revenue act applicable to this sale and, if so, what is the holding period?

The respondent contends that the question of the application of the capital gains rate as to the first installment received by this petitioner in 1933 was not passed upon in our former decision. This appears to be the fact. We did, however, construe this same contract of September 26, 1933, to which the petitioner was a party, as a community owner, in the case of *Alice G. K. Kleberg, supra.* As to one-half interest in the first installment under that contract, belonging to the estate of Robert J. Kleberg, Sr., we held that the rules applicable to capital gains were to be applied. We perceive no valid reason for departing from that holding in respect to petitioner's one-half interest received as the second installment in 1934. Petitioner

concedes she is entitled to no cost basis. She, however, claims her holding period began in 1919, when she acquired a one-half community interest in the minerals owned by her mother, Henrietta M. King. If the petitioner's holding period is in excess of 10 years she is taxable on only 30 per centum thereof under the provisions of section 117 of the Revenue Act of 1934. The respondent argues that the petitioner's right came into existence when she executed the contract of September 26, 1933, selling her interest in the mineral lease to the King estate. We do not think the respondent's position is sound. These underlying facts are undisputed. In 1919, Henrietta M. King conveyed to petitioner's husband, Robert J. Kleberg, Sr., in consideration of his services for a period of years as manager of her properties, an undivided 3/32 interest in all the minerals in her then remaining lands. From that date, Robert J. Kleberg, Sr., owned a part of the realty, which was a capital asset. It is well settled in Texas that gas and oil in place are a part of the realty susceptible of ownership and may be conveyed as any other interest in realty by appropriate conveyance. *Lemar* v. *Garner*, 121 Texas 502; 50 S.W. (2d) 769; *Brown* v. *Humble Oil & Refining Co.*, 126 Texas 296; 83 S.W. (2d) 935; on rehearing, 87 S.W. (2d) 1069; *Railroad Commission* v. *Oil Co.*, 310 U. S. 573, 579. The petitioner, as the wife of Robert J. Kleberg, Sr., likewise in 1919 became the owner of a one-half interest in the 3/32 as community property. The sale of the right to receive the rents from the 3/32 interest in the Humble lease to the King estate did not create any new right to the minerals in the petitioner. It merely changed the form in which the proceeds from the sale of the original mineral rights were to be received. The cash received was the consideration for the sale of a capital asset. We recognized this principle in our treatment of the first installment received by the estate of Robert J. Kleberg, Sr., in 1933, in our former decision. See *supra*. We there held that the estate's basis was the value as of the date of the death of Robert J. Kleberg, Sr., October 10, 1932, and not September 26, 1933, the date of the sale. The petitioner's holding period of her interest dates from the time of its acquisition in 1919, and is in excess of the 10 year period. The petitioner, therefore, is taxable upon only 30 per centum of the $37,335.37 received in 1934 as the final installment.[1]

The issues as to whether the petitioner sustained a loss in the sum of $24,800 in 1934 on the capital stock of the Kleberg Town & Improvement Co. and whether the petitioner is entitled to deduct the sum of $29,760 as a partial bad debt resulting from a transaction in connection with her interest in said company, being related matters, will be

---

[1] Sec. 117 (a), Revenue Act of 1934.

treated together. The applicable sections of the revenue act are referred to in the footnote.[2]

In *Alice G. K. Kleberg, supra,* the petitioner here having claimed a partial bad debt deduction of $29,760 and a stock loss of $24,800, representing cost of capital stock of the Kleberg Town & Improvement Co., in her 1934 income tax return, changed her position and claimed these identical deductions for 1933. We denied both these deductions for the year 1933. Denial of the partial bad debt deduction was placed on the ground that the requirements of the statute had not been met in that there had been no charge-off. The capital stock loss was denied on the ground that the stock had value at the end of 1933. Petitioner now claims these deductions for 1934.

One of the consolidated cases included in *Alice G. K. Kleberg, supra,* involved the same parties as those here. A tax for 1933 was there contested and thus was a different cause of action. One of the litigated issues of fact, however, was whether petitioner sustained a loss in that year by reason of this same stock then becoming worthless. We decided that issue against petitioner on the ground that:

* * * we do not think petitioner has sustained her burden of proof to show that the stock became entirely worthless in 1933. Doubtless the value of the stock had shrunk to where it had only a small value in 1933, but that is not enough to entitle her to the deduction which she claims.

Petitioner pleads that decision as *res adjudicata* and thus establishing the essential fact here, i. e., that this stock had value at the opening of 1934. We think the plea is good and sustain it. *Libbie Rice Farish,* 2 T. C. 949.

The respondent, nevertheless, contends that there was no identifiable event which occurred in 1934 such as usually marks the time when stock becomes worthless. The stock in this company was closely held. The company had been in a deficit status since 1918. In 1934, and for some years prior thereto, it was functioning only for the purpose of liquidating its assets. In the former *Alice G. K. Kleberg* case, *supra,* this Court strongly indicated that this stock became worthless in 1934. Such expression was *obiter dictum* there. We agree, however, that the fact is as there suggested. The record here reveals that the company was, in reality, insolvent at the close of 1934 and that its stock then had no actual or potential value. We can not disregard realities. The stock became worthless in 1934. We have so found.

The respondent has properly advanced a new theory, not presented in the former proceeding, bearing on these two issues. The argument is made that the petitioner's entire interest in the Kleberg Town & Improvement Co. is a stock interest only. If this were established, it would follow that the stock did not become worthless in 1934.

---

[2] Sec. 23 (e) (2) and sec. 23 (k), Revenue Act of 1934.

The basis of the hypothesis is that when the capital stock was reduced in 1918 there was no declaration of a dividend of the sum of $325,000, and, therefore, no proper legal liability in the form of "accounts payable" created. The substance of the argument is that the book treatment of the transaction shows a contribution to capital rather than a conversion of a stock interest into a creditor's interest in the corporation. Respondent points out that, while certain dividends were formally declared, there is no written resolution declaring any dividend in the amount of $325,000; that the instrument whereby Henrietta M. King made an assignment of her stock interest in the company to the petitioner made no mention of her "account payable" in the company. These facts lend support to respondent's theory. Ordinarily we would regard them as quite persuasive. When viewed in conjunction with the other testimony, we do not believe they are determinative. There is credible testimony that such dividend had been, in fact, declared.

The absence of a written declaration of a dividend loses considerable of its significance where the corporation is small and its stock closely held. See *M. Jackson Crispin*, 32 B. T. A. 151. Such corporations often handle their affairs rather informally. Where the interests of third parties are not involved, the internal management of a corporation is its own personal concern. Preciseness of conduct is in the interest of its protection. Furthermore, we ought not to lose sight of the fact that this company was then engaged in the single activity of liquidating its remaining assets. Such a condition is conducive to handling corporate matters with informality. The transfers of the gifts of the stock interest and the account payable to Henrietta M. King to the petitioner were duly recorded on their respective personal books in 1920 and 1924. These facts ought not to be ignored. They antedate the tax year involved by more than 10 years. This should dispel any possible suspicion that these transactions were recorded with a view of tax consequences in the year involved herein. We feel justified in accepting as a fact that the dividend was declared. The accounts payable are a valid and legal creditor liability. This conclusion requires us to hold that the petitioner has sustained the burden of establishing that the capital stock of the Kleberg Town & Improvement Co. became worthless in the year 1934. Respondent is overruled upon this issue.

Nor do we think the respondent properly disallowed a partial bad debt deduction to the extent of $29,760, ascertained and charged off by the petitioner in 1934. As we have already indicated in this opinion, in our former decision we denied the deduction for a partial bad debt deduction on the ground that the petitioner had not met both requirements of the statute permitting such deductions, i. e., ascertain-

ment and charge-off, and we found as a fact there had been no charge-off. There is no dispute that the petitioner has charged off the partial loss in 1934. Some leeway must be given to the creditor's judgment as to when the debt is partially worthless, if such judgment is based on factual circumstances. We do not understand that the respondent contests the debt was partially worthless in 1934, in the event we concluded the debt was legally created. We have so determined. We hold the petitioner is entitled to a deduction of the sum of $29,760 as a debt which became partially worthless in 1934.

The last issue is whether the petitioner is entitled to deduct the sum of $1,201.20 she disbursed for documentary stamps on the original issuance of shares of the King Ranch Corporation to her. There is no dispute that the expenditure was made by the petitioner. It is not clear whether petitioner claims the right to the deduction as a business expense under section 23 (a) or as a tax under section 23 (c). The applicable sections are referred to in footnote three.[3]

Assuming that there be no sound reason for holding the expenditure to have been incurred in a trade or business within the purview of section 23 (a) of the Revenue Act of 1934, is it deductible as taxes paid under subdivision 23 (c)? This question does not appear to have been heretofore specifically determined. Section 800 of the Revenue Act of 1926 imposes a stamp tax at a specified rate upon the issuance of original shares of corporate stock. That liability for the stamps on original issues is clearly placed upon the corporation admits of no doubt. *In Re Consolidated Automatic Merchadising Corporation*, 90 Fed. (2d) 598; certiorari denied, 302 U. S. 727; *Raybestos-Manhattan Co.* v. *United States*, 296 U. S. 60. Is the transferee also liable? In the case of *Magruder* v. *Supplee*, 316 U. S. 394, the Supreme Court said:

> The guiding principle for determining whether a payment satisfying a tax liability is a "tax paid" within the meaning of section 23 (c) is furnished by the applicable Treasury regulation, which states that "In general taxes are deductible only by the person upon whom they are imposed." See *Colston* v. *Burnet*, 59 Fed. (2d) 867; *Small* v. *Commissioner*, 27 B. T. A. 1219; Paul, Selected Studies in Federal Taxation, Second Series, p. 24 * * *.

In *Raybestos-Manhattan Co.* v. *United States, supra,* at page 61, it is said that "Section 800 imposes liability for the tax upon the transferor, the transferee and the corporation whose stock is transferred."

Treasury Regulations 71, article 88, relating to stamp taxes on documents imposed by the Revenue Acts of 1926 and 1928, provides:

> ART. 88. *Parties to taxable instrument liable.*—Both parties to a taxable instrument are responsible to the Government for affixing and canceling stamps in the

---

[3] Sec. 800, Revenue Act of 1926, Title VIII; and schedule A, Stamp Taxes, sec. 2; sec. 23 (a) and (c), Revenue Act of 1934.

required amount. The law does not prohibit parties in interest from entering into an agreement as to which of them shall actually pay the same.

We think the Treasury regulation is consistent with the provisions of section 800 of the Revenue Act. The petitioner actually paid the purchase price of the required revenue stamps on the issuance to her of the capital stock. Under the revenue act she was equally liable with the corporation to affix the stamps. She has not paid a tax which the statute imposes upon another, but has discharged her own liability. See *George A. Neracher*, 32 B. T. A. 236. The fact that it is customary for a corporation, upon the original issuance of its shares, to purchase the stamps which are required by the act to be affixed to the books of the corporation, does not affect the rule of liability as fixed by the revenue act. We hold that the petitioner was entitled to deduct the sum of $1,201.20 paid by her in 1934 for revenue stamps required on the issuance of the shares of the King Ranch Corporation, as taxes paid under section 23 (c) of the revenue act.

*Decision will be entered under Rule 50.*